**INDIANA COMPREHENSIVE HEALTH INSURANCE ASSOCIATION, Appellant (Defendant Below),**

v.

**Arthur DYE, Appellee (Plaintiff Below).**

No. 45A03–8711–CV–323.

Court of Appeals of Indiana, Third District.

Dec. 12, 1988.

Pamela P. Kosenka, Stults, Custer, Kutansky & McClean, P.C., Gary, for appellant.

Saul I. Ruman, David W. Holub, David M. Hamacher, Saul I. Ruman and Associates, Hammond, for appellee.

HOFFMAN, Judge.

The Indiana Comprehensive Health Insurance Association (ICHIA) is appealing the trial court's granting of Arthur Dye's motion to correct errors. Dye initiated this action to challenge ICHIA's denial of coverage under a health insurance policy it had issued. After discovery, ICHIA filed a motion for summary judgment which the court granted. Ultimately the court rescinded this decision when it granted Dye's motion to correct errors and ICHIA is appealing the recission.

On appeal ICHIA raises several issues, which can be restated as: whether the trial court was correct in its finding that there remained a genuine factual issue and that ICHIA was not entitled to judgment as a matter of law.

ICHIA is a legislatively, created health insurance provider whose essential purpose is to provide health insurance coverage for certain high risk individuals. IND.CODE § 27–8–10–1 (1982). The basic eligibility requirements for ICHIA coverage are that the individual is an Indiana resident and that the individual has been rejected for standard coverage by two private health insurers. Once these conditions are met, ICHIA cannot reject an application.

Arthur Dye had a long standing medical history of diabetes and hip and leg problems. Dye became aware of ICHIA after he was rejected for standard health insurance by one carrier. Dye submitted an application for ICHIA insurance on October 19, 1983 along with an initial premium check and proof of the one rejection. Dye failed to submit the required proof of rejection by a second health insurance carrier until around December 12, 1983, and consequently the ICHIA policy was not issued until December 27, 1983.

The application for the ICHIA policy contained the following pertinent exclusionary clause:

"PREEXISTING CONDITIONS (THOSE WHICH WERE DIAGNOSED OR TREATED IN THE SIX MONTHS PRIOR TO THIS APPLICATION) WILL NOT BE COVERED UNTIL THE ICHIA POLICY HAS BEEN IN FORCE FOR SIX MONTHS."

The ICHIA policy itself contained the following exclusionary clause:

"PART J. PREEXISTING INJURY OR SICKNESS PROVISIONS

The benefits of this policy will not be payable for any preexisting injury or sickness for the first six months follow-

ing the Policy Date. Preexisting injury or sickness means an injury of sickness which:

(a) manifested itself within six months prior to the Policy Date in such a way that an ordinarily prudent person would seek diagnosis, care or treatment; or

(b) medical advice or treatment was recommended or advised within six months prior to the Policy Date.

We will pay only for loss or expense incurred after such six-month period. Payment will be in accord with the provisions of this policy."

Also the policy's "Part Q" read:

"1. Entire Contract; Changes: This policy, your application and any riders is the entire contract of insurance. No agent may change it in any way. Only the Indiana Comprehensive Health Insurance Association can approve a change. Any such change must be shown in your policy."

On September 22, 1983, shortly before applying with ICHIA, Dye was examined by a Dr. Buyer. At that time Dye complained of an episode of exertional chest pain. Dr. Buyer labeled the problem "angina" and prescribed nitroglycerin. At his subsequent deposition Dr. Buyer testified that angina simply means chest pain and that angina is a symptom of a number of heart conditions, including coronary vasospasm, coronary artery disease and myocardial infarction. Dr. Buyer stressed that a finding of angina is not a diagnosis; rather, it was a recognition of a symptom. Dr. Buyer also stated that in this application, the nitroglycerin was more of a diagnostic tool than a remedy.

Dye's medical situation remained essentially unchanged for quite some time. The nitroglycerin controlled the angina until April 1984, when Dye was admitted to the hospital because of "crescendo angina," which means angina getting worse. Dr. Buyer was initially concerned about a heart attack, but testing revealed coronary artery disease. By-pass surgery was performed shortly thereafter and in May 1984 Dye submitted a claim to ICHIA for ex-

penses related to the heart surgery. ICHIA denied the claim, citing the pre-existing condition clause and Dye initiated the present action.

Indiana Rules of Procedure, Trial Rule 56(C) provides that summary judgment is available only where the results of discovery, any testimony and the affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Trial Rule 59(J) empowers a trial court to reconsider a judgment and grant a motion to correct errors when the court finds that prejudicial or harmful error has been committed. Clearly, an improvidently granted summary judgment would normally be prejudicial or harmful error. Thus the ultimate question raised here is whether the trial court correctly found that summary judgment was not appropriate.

The initial question to be answered is exactly what policy language applies. Specifically, the above-quoted sections of the policy raise an issue about how the term "pre-existing condition" is defined. The general rule in interpreting insurance contracts, and all other contracts of adhesion, is that, in the normal case, the court must simply apply the plain ordinary meaning of the contract language. In cases of ambiguity, where more than one reasonable interpretation is possible, and especially where a coverage exclusion is involved then the court must adopt the interpretation most favorable to the insured. *See e.g. Huntington Mutual Ins. v. Walker* (1979), 181 Ind.App. 618, 392 N.E.2d 1182. In the present case, it does not require extensive reasoning to see that the insurance policy contains two definitions of the term pre-existing condition and is thus ambiguous. It is also clear that the definition contained in the application is narrower, and less inclusive and is the one that must be adopted here. Accordingly, and solely within the context of the present case, the term pre-existing condition means those conditions which were diagnosed or treated within the six months before the application date of October 19, 1983.

This resolution, of course, does not resolve this case, because the meaning of the terms "diagnosed" and "treated", as used in the application, must still be decided. These terms are not defined in the policy or the application; however, accepted definitions are not difficult to find. "Diagnosis" is defined as, "[a] medical term, meaning the discovery of the source of a patient's illness or the determination of the nature of his disease from a study of its symptoms." *Black's Law Dictionary* 408 (5th ed. 1979). Similarly, *The Sloane–Dorland Medical–Legal Dictionary* 199 (1987) defines "diagnosis" as, "1. The art of distinguishing one disease from another. 2. The determination of the nature of a case of disease."

The term "treated" or "treatment" apparently has two accepted meanings. One meaning is very broad and encompasses essentially all aspects of the patient-physician relationship. *See e.g. Lucito v. Louisiana Hospital Service, Inc.* (1980), La. App., 392 So.2d 700. However Indiana has adopted a much narrower view of the term. In *Modern Woodmen, etc., v. Miles* (1912), 178 Ind. 105, 97 N.E. 1009, the Supreme Court held that a physician's prescription of an analgesic for a headache is not rendering treatment, because the physician was only relieving a symptom and not acting on a diagnosis of a specific condition.

In the present case the record before the trial court on the summary judgment motion, and on the motion to correct error was relatively simple. The sole testimony regarding the diagnosis and treatment of Arthur Dye's condition came from Dr. Buyer. The physician testified that his finding that Dye suffered from angina was not a diagnosis, instead it was merely a description of a symptom. Additionally the doctor testified that the prescription for nitroglycerin was intended as a diagnostic tool and not as a treatment for the coronary artery disease that ultimately necessitated the by-pass surgery. Based on these facts, there is at least a genuine factual issue as to whether Dye was diagnosed or treated for coronary artery disease within the exclusionary period.

Since the record before the Court presents a genuine issue of material fact precluding summary judgment in favor of the Indiana Comprehensive Health Insurance Association, the trial court correctly granted Arthur Dye's motion to correct errors. Accordingly this case is affirmed and remanded for further proceedings.

AFFIRMED.

GARRARD, P.J., and MILLER, J., concur.