Warren C. WISCHMEYER, Plaintiff,

v.

PAUL REVERE LIFE INSURANCE COMPANY, Defendant.

No. IP88–1428–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 27, 1989.

James McNeal, Indianapolis, Ind., for plaintiff.

Robert P. Johnstone, Michael A. Klein, Barnes & Thornburg, Indianapolis, Ind., for defendant.

### ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

McKINNEY, District Judge.

This diversity action comes before the Court on the plaintiff's motion for summa-

ry judgment and motion to dismiss affirmative defenses and counterclaim. The motions raise questions concerning whether incontestability clauses in a disability policy preclude the insurer from denying payments because of alleged misrepresentations by the insured of financial status and prior medical history. The issues raised have been fully briefed and the parties have submitted supporting evidence. For the reasons set forth below, the Court DENIES the plaintiff's motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND [1]

On April 1, 1986, plaintiff Warren Wischmeyer met with insurance agent John Kirch of Paul Revere Life Insurance to apply for a contract of disability insurance. At their meeting agent Kirsch asked Wischmeyer a number of questions and Kirsch then completed an application for a disability policy on Wischmeyer's behalf. Wischmeyer then signed the application that same day.

In the application, Wischmeyer listed the name and address of his personal physician, who is Dr. Duggan, and gave the date and reason "for last consultation" as February of 1986 for cold and flu. He denied that he was under observation or treatment or taking medication, denied being examined or having consulted any physician other than Dr. Duggan, and also denied that he had been under observation in a hospital within the last five years or had had an x-ray, EKG, blood or urine test, or other lab test. He listed his earned income as $25,000 for 1986 and $20,000 for 1985. He also stated that his unearned income did not exceed $5,000 per year.

In fact, though, Wischmeyer had been a patient at St. Francis Hospital from December 17 through December 25, 1984, and was treated for muscle aching, cramping, fatigue, headaches, and difficulty with concentration. Several lab studies were done including an EEG, EMG, serum protein electrophoresis, CBC, sed rate, PTT, urinal-

ysis, CPK, aldolase, and a CT scan of the head among others. In September of 1985, the plaintiff had an outpatient procedure at St. Francis where he underwent a cystoscopy. Had Paul Revere Insurance known these facts, its decision to insure the plaintiff would have been impacted.

Plaintiff's actual financial condition was different than that contained in the application. Plaintiff made only $512 of earned income in 1986 and $999 in 1985. In 1985 and 1986 he actually had unearned income exceeding $5,000. Had the insurer known of these facts, its decision to insure the plaintiff would have been affected, for the insurer had a policy requiring applicants to have earned income of at least $15,000, and persons with high levels of unearned income are less likely to qualify for disability income protection.

Soon after the disability insurance application was completed, the defendant issued a policy of coverage to the plaintiff. The policy states that coverage began on March 23, 1986. Plaintiff received the policy in April or May of 1986. The policy provided disability insurance coverage for total disability, which means that "because of Injury or Sickness:

a. You are unable to perform the important duties of Your regular occupation; and

b. You are not engaged in any other gainful occupation; and

c. You are under the regular and personal care of a Physician.

The policy further defined "Sickness" as "sickness or disease which first manifests itself after the Date of Issue and while Your Policy is in force."

The policy defined a pre-existing condition as a sickness or physical condition for which, prior to the date of issue, symptoms existed "that would cause an ordinarily prudent person to seek diagnosis, care, or treatment; or medical advice or treatment was recommended by or received from a physician." The policy stated that the in-

1. The material facts relayed are undisputed, are determined to be admissible under the Federal Rules of Evidence, and are taken favorably for the non-movant defendant on this summary judgment motion.

surer "will not pay benefits for a Pre-existing Condition if it was not disclosed on Your application."

In Part Ten of the insurance contract there is an "Incontestable" clause, which reads as follows:

a. After your policy has been in force for two years, excluding any time You are Disabled, We cannot contest the statements in the application.

b. No claim for loss incurred or Disability beginning after two years from the Date of Issue will be reduced or denied because a disease or physical condition existed before the Date of Issue unless it is excluded by name or specific description.

Although the insurer had the right to do so, it did not secure plaintiff's medical records from Dr. Duggan, nor did it give plaintiff a physical examination.

In October of 1986, after the policy had been in force for several months, Wischmeyer began seeing Dr. Kincaid, a neurologist, and continued to see him periodically thereafter. On July 1, 1988, Wischmeyer submitted a proof of loss claim upon Paul Revere Insurance, along with an accompanying disability statement from Dr. Kincaid. The disability statement recited that disability was due to fibromyalgia, which is chronic post viral fatigue syndrome.

After receiving the proof of claim, Paul Revere Insurance denied the claim. Plaintiff then filed this lawsuit on December 14, 1988, and on February 8, 1989, Paul Revere Insurance filed its Answer and Counterclaim setting forth several affirmative defenses. After the Amended Complaint was filed in this action, defendant renewed its defenses. Relevant to this motion are the following three affirmative defenses, which can be summarized as follows:

1. *Second Defense:*

Charges plaintiff with misrepresentation of medical and financial information on the insurance application.

2. *Third Defense:*

Asserts that the "claimed sickness was not covered because it did not first manifest itself after the date of issue and while the Policy was in force."

3. *Fourth Defense:*

Asserts that the "claimed sickness is a pre-existing condition which was not disclosed on the application."

In its accompanying counterclaim, Paul Revere seeks to rescind the policy on the same grounds set forth in its defenses.

Plaintiff has now moved for summary judgment on the affirmative defenses, arguing that the insurer is precluded from litigating these issues because of the policy's two-year incontestability clause. Further, plaintiff seeks dismissal of the rescission counterclaim for the same reasons. Because the dismissal motion is accompanied with supporting evidence, the Court will treat the motion to dismiss as a motion for summary judgment.

Thus, the issues before the Court today are whether the insurer's inter-related defenses of lack of coverage (Third and Fourth Defense) and misrepresentation of a pre-existing condition (Second and Fourth Defense), along with the accompanying counterclaim, are barred by the incontestability clause of the policy. After setting forth the relevant summary judgment standards, these issues will be addressed.

## II. SUMMARY JUDGMENT STANDARDS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Since the Supreme Court's trilogy of decisions on summary judgment, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), it is clear that the mandatory aspects of Rule 56 must be followed by the district courts, and, as a result, summary judgment must be entered where appropriate.

Decisions of the Seventh Circuit reflect this change in attitude as well. *See, e.g., Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir.1989); *Spellman v. Commissioner,* 845 F.2d 148, 152 (7th Cir.1988); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473 (7th Cir.1988). In short, it is the advocates, not the courts, who must press their claims and vigorously oppose the motion for summary judgment. *See, e.g., Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir.1989) (courts need not scour record to support a party's claim at summary judgment; adversaries are to pursue their cases and courts are to rule accordingly).

With these standards at hand, the Court will address the substantive questions raised.

## III. DISCUSSION

Despite the lengthy recitation of facts, this is a straightforward coverage case. Yet, as is indicated by the parties' diametrically opposed briefs and the fact that the disability insurer in this case takes the unusual position (and wisely so) that the plaintiff has been disabled for some time, resolution of the present motion is not without its difficulties. The subtleties of the case cause additional problems because there is but sparse Indiana law addressing the questions raised. Nonetheless, if the issues are analyzed one at a time, the end results are much clearer.

A. *Section 10.2(a) of the incontestable clause does not bar the insurer's defenses because the clause specifically excludes any time the insured was disabled from the two year incontestable period, and it is a question of fact whether the plaintiff was disabled within that two year period.*

In bringing the present motions, the plaintiff has focused on the incontestability clause of Section 10.2(b), which speaks to pre-existing conditions. Before addressing that aspect of the case, however, the first provision of the incontestable clause must be addressed. Specifically, Section 10.2(a) of the Policy reads as follows:

10.2 **INCONTESTABLE**

a. After Your Policy has been in force for two years, *excluding any time You are Disabled,* We cannot contest the statements in the application.

*See Contract* at p. 14 (emphasis added). This clause of the contract is plain and unambiguous. It simply provides that after two years no statements in the application can be contested. However, it also states that the two year period does not include any time that the insured is disabled.

Thus, if the policy has been in force for one year and plaintiff then becomes disabled and applies for benefits after two years, the insurer is not precluded from contesting any statements in the application under Section 10.2(a) of the policy. While this Court has not located any Indiana decision dealing with this narrow issue,[2] this is the interpretation made by other courts faced with similar clauses. *See e.g., Standard Security Life Ins. Co. v. Klamer,* 27 A.D.2d 656, 276 N.Y.S.2d 645, 646 (1967) (insurer's action was not time barred by incontestable clause where the clause had a tolling provision for any time the insured was disabled); *Union Mutual Life Ins. Co. v. Kevie,* 13 A.D.2d 755, 215 N.Y.S.2d 298, 299 (1961) (same).

This is the precise scenario presented in this case, for the insurer has come forth with evidence from which a trier of fact could conclude that the plaintiff was disabled during the two-year period after the policy was issued. Specifically, Dr. Kincaid's disability statement dated July 1,

---

**2.** Although Indiana requires all policies to contain a very similar provision, *Ind.Code Ann.* § 27–8–5–3 (requiring no longer than a 3 year incontestable period as to statements in the application, with periods of disability excluded from the 3 years), there are apparently no Indiana decisions addressing the tolling issue.

This Court, sitting in diversity, must attempt to predict how the Indiana Supreme Court would resolve these issues. *Williams, McCarthy, Kinley Rudy & Picha v. Northwestern Nat. Ins.,* 750 F.2d 619 (7th Cir.1984); *Heinhold v. Bishop Motor Exp., Inc.,* 660 F.Supp. 382 (N.D.Ind.1987).

1988, indicates that plaintiff had been "trying to function at a reduced level for 1 and ½ years." On June 18, 1987, slightly more than a year after the policy was issued, Dr. Kincaid stated that plaintiff "has been able only to do 1–2 hours of accounting per day." Plaintiff himself testified in his deposition that he had limited his accounting practice due to fatigue during 1986 and 1987, and he stated that there was no major change in his symptoms from 1987 to the time he filed his claim in 1988. This evidence alone is sufficient to raise a question of fact as to whether plaintiff was disabled prior to the time two years had lapsed after issuance of the policy.

Thus, there being a question of fact as to disability during the two-year period contemplated by Section 10.2(a) of the incontestable clause, summary judgment is inappropriate in this respect. At this stage, the insurer is not precluded by Section 10.2(a) of the policy from contesting the statements made in the application. *Accord, Klamer,* 276 N.Y.S.2d at 646 (summary judgment inappropriate on tolling issue where there was evidence of disability during the incontestable period); *Kevie,* 215 N.Y.S.2d at 299 (same). *Cf., Springfield Life Ins. Co. v. Bowles,* 1989 WL 156191, No. 88–1108, 1989 U.S.Dist. LEXIS 8892 (D.Ariz. July 28, 1989) (summary judgment granted where it was shown as a matter of law that plaintiff was not disabled during the tolling period).

On these motions for summary judgment, then, Section 10.2(a) of the incontestability clause does not preclude the insurer from contesting the plaintiff's statements as to his financial status, including earned and unearned income. Indeed, there is nothing else in the policy that protects the insured from litigating the question of whether his statements about his financial status constitute material misrepresentations. Thus, regardless of the outcome of the pre-existing condition and medical history concealment issues, the insurer can press forward with the argument embodied in its Second Affirmative Defense and in paragraphs 6 and 7 of its Amended Counterclaim that the plaintiff allegedly misrepresented his financial situation.

Nor does this part of the incontestability clause, by itself, prevent the insurer from litigating the issue of concealment of prior medical history or the question of a pre-existing condition. There is, however, another subsection of the incontestability clause that impacts this aspect of the case.

B. *Because there is a question of fact as to whether plaintiff's disability began after two years from the issuance of the policy, the insurer is not precluded from contesting liability on grounds of concealing a pre-existing condition under Section 10.2(b) of the incontestability clause.*

1. Background:

Another aspect of the insurer's defenses and counterclaim focuses on the plaintiff's alleged misrepresentation of his past medical history and purported pre-existing condition. The insurer sets up three related defenses in this respect. First, the insurer claims that the plaintiff misrepresented his medical history on the insurance application.[3] Second, the insurer argues that the claimed sickness is not within the coverage of the policy because it did not first manifest itself after the date of issue.[4] Finally, the insurer asserts that there is no coverage because the claimed sickness is a pre-existing condition that was not disclosed on the application.[5]

In his motions for summary judgment, plaintiff asserts that each of these defenses is barred by Section 10.2(b) of the incontestability clause, which reads as follows:

> No claim for loss incurred or Disability beginning after two years from the Date of Issue will be reduced or denied because a disease or physical condition ex-

**3.** *See* Second Affirmative Defense and paragraphs 4 and 5 of Amended Counterclaim.

**4.** *See* Third Affirmative Defense and paragraph 4 and 5 of Amended Counterclaim.

**5.** *See* Fourth Affirmative Defense and paragraphs 4 and 5 of Amended Counterclaim.

isted before the date of issue unless it is excluded by name or specific description. *See* Policy at p. 14. This provision is required by Indiana law to be in all such policies. *See Ind. Code* § 27–8–5–3(a)(2)(B). The only difference in the clause in this policy and that required by Indiana statute is that the insurer here has shortened its incontestable period to two years from the maximum three years allowed by the statute. As is discussed below, under the evidence submitted on these motions for summary judgment, though not for all the reasons asserted by the defendant, this incontestability clause does not preclude the insurer from denying the claim because of the existence and/or concealment of a pre-existing medical condition.

2. History and purpose of incontestability clauses:

In order to address these issues, it is first necessary to trace the history of incontestability clauses. These clauses are now required by statute in most states because without them, insurers were apt to deny benefits on the grounds of a pre-existing condition years after a policy had been issued. This left beneficiaries, particularly those in life insurance settings, in the untenable position of having to do battle with powerful insurance carriers. *See* 7 *Williston on Contracts* § 912.394 (3d ed. 1963) (noting that these clauses came from the "early greed and ruthlessness of the insurers" who "too often ... resisted liability stubbornly on the basis of some misstatement made by the insured at the time of applying for the policy").

In order to promote certainty and reduce litigation, many states enacted statutes requiring life, disability, and health policies to contain incontestability clauses. As the Seventh Circuit has explained, such clauses are "in the nature of a statute of limitation and repose, and while conscious fraud practiced in inducing another to act, to his detriment, is extremely obnoxious, ... the law recognizes that there should be a limitation of time in which an action may be brought or a defense set up." *Columbian National Life Ins. Co. v. Wallerstein*, 91 F.2d 351, 352 (7th Cir.1937). The rationale

and policy behind such clauses was elaborated upon by one authority as follows:

[T]here are conflicting forces of public policy which affect the matter of contestability. If an applicant chooses to gamble when he seeks a policy of life insurance, he may be guilty of outrageous fraud, and if the insurer fails to uncover such fraud within the contestable period he has been successful. Even if he makes such discovery in time, he receives back his premiums so that he has suffered no loss. On the other hand, only a miniscule percentage of the population ever resorts to such devious conduct, and it is considered desirable to have a cutoff time as to ordinary misrepresentations for two reasons: first, to lighten the burden upon the courts, since litigation otherwise could be increased manyfold; second, since most contests would arise after the insured's death, a beneficiary is in a deplorable condition to wage battle with a large insurer over statements which may have been made years earlier. For these reasons, it is better to countenance the occasional risk of fraud in order to bring an end to controversy.

J. Appleman, 1A *Insurance Law and Practice* § 311 at 305–6 (1981).

Another authority has similarly noted that such clauses are designed "to require the insurer to investigate and act with reasonable promptness if it wishes to deny liability on the ground of false representation or warranty by the insured." G. Couch, 18 *Couch on Insurance* § 72:2 at 283 (1983). "It prevents an insurer from lulling the insured, by inaction, into fancied security during the time when the facts could best be ascertained and proved, only to litigate them belatedly, possibly after the death of the insured." *Id.* at 283–84. Such clauses "are generally regarded as valid, being neither unreasonable nor against public policy." *Id.,* § 72:3 at 284. Indeed, Indiana has long recognized the validity of such required clauses. *See Indiana National Life Ins. Co. v. McGinnis*, 180 Ind. 9, 101 N.E. 289, 291 (1913); *Rex Insurance Company v. Baldwin*, 163

Ind.App. 308, 323 N.E.2d 270, 273–74 (1975).

### 3. Interpretation of Section 10.2(b) of the policy:

While many of the states require the same or a very similar clause, and while the interpretations of such clauses made by other courts are somewhat instructive, the provision in this case controls the resolution of today's motions. "The general rule in interpreting insurance contracts, and all other contracts of adhesion, is that, in the normal case, the court must simply apply the plain ordinary meaning of the contract language." *Comprehensive Health Ins. Ass'n v. Dye*, 531 N.E.2d 505, 507 (Ind.App. 1988). While the general rule in insurance cases is that any ambiguity should be resolved in favor of the insured, *Mutual Hospital Ins., Inc. v. Klapper*, 262 Ind. 144, 312 N.E.2d 482, 483 (1974), the situation is somewhat different where the clause in question is required by statute. As the Indiana Court of Appeals explained early on, a contractual provision required by statute does not carry with it the same badges of superior bargaining power that otherwise are the hallmark of adhesion contracts. *Ebner v. Ohio State Life Ins. Co.*, 69 Ind.App. 32, 121 N.E. 315, 319 (1918); *accord* Annot., *Construction of Incontestable Clause Applicable To Disability Insurance*, 13 A.L.R.3d 1383, 1385 (1967) (ambiguity in incontestability clauses are construed against insurer, but if it is required by statute, normal rules of construction apply).

Thus, the provision here, "while prescribed by statute, derived its force from the consent of the parties to it as a part of a contract; hence it should be construed as a contract, rather than a statutory provision; its origin, however, being kept in view." *Ebner*, 121 N.E. at 319. This Court, then, must apply the plain and ordinary meaning of the clause's language, mindful that the clause was the result of a specific statutory directive.

The clause in question, which must be set forth again for reference, provides:

No claim for loss incurred or Disability beginning after two years from the Date of Issue will be reduced or denied because a disease or physical condition existed before the date of Issue unless it is excluded by name or specific description. Section 10.2(b). This generic clause is also found in policies other than those for disability, *accord, Mutual Life Ins. Co. v. Hayden*, 87 Misc.2d 1039, 386 N.Y.S.2d 978, 981 (1976), and, as will be shown later, the last phrase of the clause is inapplicable to this case. Accordingly, for purposes of this motion the clause can be redacted and simplified as follows:

No claim for ... Disability beginning after two years from the date of issue will be ... denied because a disease or physical condition existed before the date of Issue....

The clear mandate of the clause can be further broken down into separate sequential sections as follows:

1. If an insured files a claim for disability;

2. And, if that disability began after two years from the date of issue;

3. Then the insurer *cannot* deny the claim because of a pre-existing condition.

Although the same provision could have been drafted with more clarity, this is the only possible construction of the particular clause in question. It clearly reflects a legislative mandate that if an insured is not disabled for two years after issuance of the policy, then his claim for benefits cannot be denied on the grounds that he had a pre-existing condition. Here it is important to emphasize that the incontestable period is of no effect if the disability began prior to the end of the two year period. Thus, if an applicant conceals a pre-existing condition but becomes disabled within 24 months, the insurer is free to deny the claim.

By use of this precise language, the legislature struck a balance. The clause protects an insured who is healthy enough to work throughout the two-year period from losing the security of disability insurance because of some prior condition that might eventually disable him. On the other hand,

the insurer is protected in that it is not precluded from denying benefits to an applicant whose pre-existing condition is so bad that he becomes disabled during the two-year period.

### 4. Application of Section 10.2(b) to this case:

In this case, then, it is a question of fact as to whether Section 10.2(b) of the incontestability clause precludes the insurer's defenses. As set forth previously, there is ample evidence from which a jury could conclude that the plaintiff was disabled prior to the running of the two-year period. If the jury were to find that plaintiff were disabled during that time, then Section 10.-2(b) would have no application to this case.

The fact that the plaintiff filed his claim more than two years from the date of issuance is of no import, for the plain language of the policy makes it clear that the crucial factor is whether the insured became *disabled* within the two year period. The time of filing is simply irrelevant to the particular incontestability clause invoked in this case.

Although there are no Indiana decisions on point, similar results have been reached in cases from other jurisdictions. For instance, in *Bronson v. Washington Nat. Ins. Co.*, 59 Ill.App.2d 253, 207 N.E.2d 172 (1965), the Illinois Court of Appeals was faced with a similar clause and circumstance. There the plaintiff had misrepresented prior hospitalizations on his application and had become disabled during the two-year incontestable period. However, the insurer had not taken any action regarding the plaintiff's application during the two-year period, and the plaintiff did not file his action against the insurer for benefits until after the two-year period had expired. Nonetheless, the Illinois Court of Appeals followed the plain language of the statute and held that the insurer "may raise a defense of misstatement, after two years from the date of the policy, against claims commencing before the expiration of such two year period." *Bronson*, 207 N.E.2d at 176.

To the same effect is *Mutual Life Ins. Co. v. Hayden*, 87 Misc.2d 1039, 386 N.Y. S.2d 978, 981 (1976), where a similar clause was held inapplicable because the insured became disabled prior to the running of the two-year period. The *Hayden* court explained its decision, writing, "[T]he alleged disability commenced *less* than two years after the policies were issued, i.e., in January, 1968, only three months thereafter" *Id.* (emphasis in original). "Accordingly, the incontestable clause does not bar [the insurer] from claiming that defendant's condition pre-existed [the date of issuance]." *Id. Cf., Ferguson v. Unionmutual Stock Life Ins. Co.*, 673 F.2d 253 (8th Cir.1982) (incontestable period applied to insured who withdrew a claim during running of the two-year period and advised the insurer that no further claim would be made, only to later file a claim immediately after the two-year period expired).

Accordingly, because there is a question of fact as to whether plaintiff was disabled during the two-year period, summary judgment is denied.

### 5. The effect of Section 10.2(b):

Beyond today's narrow holding on summary judgment, the Court is obliged to inform the parties of its interpretation of the effect of Section 10.2(b) of the incontestability clause given the arguments raised at this stage. As discussed above, the clause will be inapplicable if the jury finds that plaintiff was disabled within two years after the issuance of the policy. However, if the jury finds otherwise, the clause does apply.

If the clause is applicable, the next question is what becomes of the insurer's defenses. The insurer has argued that because the policy states at Section 1.16 that there is no coverage for non-disclosed pre-existing conditions, and because disability is defined at Sections 1.10 and 1.6 in terms of sickness that first manifests itself after issuance of the policy, there is no coverage to begin with in this case. Thus, the insurer argues, because there is no coverage, any issue of the incontestability clause is irrelevant.

The insurer's argument has support in much of the case law, for it is the rule in many states that such clauses do not affect coverage, instead they merely speak to what can be "contested." As one source notes:

> The courts have uniformly construed incontestability clauses as barring a defense based upon fraud in the application for insurance, after the specified period has passed. There is somewhat less uniformity on the question whether the claim may be resisted on the ground that the disability antedated the issuance of the policy, however. While most courts take the view that pre-existing disability is a defense to coverage rather than a "contest," and is thus not negated by the incontestable clause, there is authority to the contrary....

*Annot.*, 13 A.L.R.3d at 1385. Indeed, the Ninth Circuit, predicting what the Arizona courts would do, recently interpreted an almost identical clause and held that the insurer was not precluded from raising the pre-existing condition defense. *Button v. Connecticut General Life Ins. Co.*, 847 F.2d 584 (9th Cir.1988). After noting that it is "not as clear" whether a claim may avoided for pre-existing conditions, the Ninth Circuit held that the "better-reasoned view is that the incontestability clause relates to the validity of the contract and not to the construction of policy provisions." *Id.* at 588.

With all due respect to the Ninth Circuit and the several other courts that have reached this conclusion, this diversity Court is compelled to conclude that if the plain, unambiguous language of this particular clause is followed, the result must be that pre-existing conditions cannot be used as a defense if the plaintiff did not become disabled within two years. In order to demonstrate this, it is necessary to once again set forth the clause as redacted for this case:

> No claim for ... Disability beginning after two years from the date of issue will be ... denied because a disease or physical condition existed before the date of Issue....

As before, breaking this clause down into its sequential steps reveals the following:

1. If an insured files a claim for disability;
2. And, if that disability began after two years from the date of issue;
3. Then the insurer *cannot* deny the claim because of a pre-existing condition.

Contrary to what some courts have concluded, this clause very clearly states that pre-existing conditions cannot be used to deny a claim after two years, unless the plaintiff became disabled during those two years.

Again, because it needs to be emphasized, the Indiana General Assembly has mandated that *no claim will be denied after two years because of a pre-existing condition.* An exception to the rule of law exists if the insured became disabled during that period. Thus, to the extent that any policies of insurance define disability in terms of sickness manifesting itself after the issuance of the policy, or that otherwise attempt to exclude from coverage any disability stemming from a pre-existing condition, those policies are in direct conflict with the mandate of the legislature once two years has passed.

Many of the courts that have found to the contrary have focused upon the semantics of words such as "contest," "pre-exist," and "manifest." *See, e.g., National Life & Accident Ins. Co. v. Mixon*, 291 Ala. 467, 282 So.2d 308 (1973); *North Miami General Hospital v. Central Nat'l Life Ins. Co.*, 419 So.2d 800 (Fla.App.1982); *Annot.*, 13 A.L.R.3d at 1392–1397 (summarizing cases). However, nowhere is the word "contest" or "manifest" used in this section of the clause mandated by the Indiana legislature.[6] Rather, the word "contest" is

---

6. Thus, *Guardian Life Ins. Co. v. Barry*, 213 Ind. 56, 10 N.E.2d 614, 615 (1937), one of the early Indiana cases relied upon by the insurer, is inapposite because the particular statute in question in that case did use the word "incon-

testable." Today's statute clearly does not. Moreover, the decision in *Prudential Ins. Co. v. Rice*, 222 Ind. 231, 52 N.E.2d 624 (1944), is not applicable because there the issue was whether disability resulting from self-inflicted injury oc-

used only in the first incontestable clause, and the term "manifest" is injected into the policy elsewhere by the insurer.

As other courts have found, clauses such as the one at issue here strike a clear balance based on policy reasons, and to allow coverage provisions of a policy to prevail over the statutorily required clauses is to thwart the mandate of the legislature. *See, e.g., Taylor v. Metropolitan Life Ins. Co.,* 106 N.H. 455, 214 A.2d 109 (1965) (defense of pre-existing conditions barred by clause); *Penn Mutual Life Ins. Co. v. Kelley,* 88 N.H. 351, 189 A. 345 (1937) (same); *Monarch Life Ins. Co. v. Brown,* 125 A.D.2d 75, 512 N.Y.S.2d 99 (1987) (same); *White v. Massachusetts Casualty Ins. Co.,* 96 A.D.2d 732, 465 N.Y. S.2d 345 (1983) (same). As one federal district court has noted, clauses in policies that seek to exclude pre-existing conditions attempt "to nullify the protection of the incontestable clause by excluding from coverage illness which manifests itself before the policy is issued." *Fischer v. Massachusetts Casualty Ins. Co.,* 458 F.Supp. 939, 945 (D. D.C.1978). Such coverage provisions controvert the statutorily imposed incontestable clauses and thus cannot be considered where no disability is shown to have existed during the two-year period. *Id.* at 945.

Thus, if the trier of fact in this case finds that Mr. Wischmeyer was not disabled during the two-year period, then the incontestable clause prevents the insurer from denying his claim based on a pre-existing condition. Any clause in the policy to the contrary conflicts with the mandate of the legislature where the incontestable clause applies.

Although not specifically raised by the parties nor, apparently, by any other court, there remains one final issue concerning the clause in question. Specifically, the clause, by its own terms, is inapplicable if a disease or physical condition existing before the date of issue is excluded from coverage by name or specific description. The clause reads:

> No claim for ... Disability beginning after two years from the Date of Issue will ... be denied because a disease or physical condition existed before the Date of Issue *unless it is excluded by name or specific description.*

Section 10.2(b) (emphasis added). A possible argument for the insurer is that by attempting to exclude pre-existing conditions from coverage in Section 1.16 of the policy, the insurer has "excluded by name or specific description" the item sought to be covered, thus making the incontestable clause inapplicable. While this is at least a plausible theory, this Court interprets the language differently for two separate reasons.

First, the word "it" in the phrase "unless *it* is excluded by name or specific description" most logically refers to "a disease or physical condition [that] existed before the Date of Issue." The most reasonable interpretation of these words is that a *specific* pre-existing condition, i.e., something such as tuberculosis or diabetes, may be specifically excluded from coverage by agreement of the parties if that condition is named or specifically described in the policy. If such an agreement of exclusion is reached by the parties, then the incontestable clause would not prevent the insurer from denying coverage based on *that particular named pre-existing condition.* If, on the other hand, such a specific pre-existing condition is not excluded from coverage by name or specific description, then the insurer cannot deny a claim based on that condition if the plaintiff's disability does not begin until more than two years from issuance of the policy.

This interpretation simply follows the rule of construction that language in an insurance contract is to be given its plain, ordinary, and common sense meaning. *Comprehensive Health Ins. Ass'n v. Dye,* 531 N.E.2d 505, 507 (Ind.App.1988); *Ebner v. Ohio State Life Ins. Co.,* 69 Ind.App. 32,

---

curring after the issuance of the policy was covered under the contract as a matter of public policy. Moreover, it also appears in *Rice* that the incontestable clause used the word "incon-

testable." Again, today's clause uses different language, and today's case is governed squarely by interpreting the plain meaning of the terms used.

121 N.E. 315, 319 (1918). Here the most reasonable interpretation is that in order to benefit from this final phrase of the incontestable clause, the insurer must specifically name or describe a particular pre-existing condition, and not merely add a clause in the policy attempting to exclude all pre-existing conditions.

Second, to hold otherwise would give the statutorily required clause an absurd meaning. It is a well settled rule of law that statutes are to be construed so that absurd or inconsistent results are not reached. *Baker v. State*, 483 N.E.2d 772, 774 (Ind. App.1985); *Sierra Club v. Indiana–Kentucky Elec. Corp.*, 716 F.2d 1145, 1151 n. 6 (7th Cir.1983). Had the legislature intended to allow the insurer to generally exclude pre-existing conditions from the incontestable clause, it could have written the statute as follows, with the underlined words departing from what was actually mandated:

No claim ... for disability beginning after two years from the date of issue will be ... denied because a disease or physical condition existed before the date of issue unless *the insurance policy states that this incontestable clause covering pre-existing conditions does not apply to pre-existing conditions.*

Of course, such a provision would be absurd, for all insurers would instantly place such a statement in their form policies, and thereafter no insurer would be precluded from denying claims based on pre-existing conditions.

Yet, that is the precise construction that is implicitly urged by the insurer here when it argues that Mr. Wischmeyer's claim is not covered by virtue of Section 1.16 of the policy, which purports to exclude all pre-existing conditions from coverage. The legislature instead has required pre-existing conditions to be excluded from coverage by "name or specific description."

It would make no sense to say that the term "pre-existing condition" is a "name or specific description" of the term "pre-existing condition." The circular nature of such a construction is immediately apparent. Clearly, the legislature had something else in mind. While the legislature is certainly free to pass what might be considered an absurd provision, that absurdity in essence must be shown by the plain and ordinary language used. Such is not the case here.

## IV. CONCLUSION

In summary, the plaintiff's motions for summary judgment are denied because, as to both sections of the incontestable clause, there are questions of fact as to whether the plaintiff was disabled within two years of the policy date. If the trier of fact finds that plaintiff was disabled during that two-year period, then the incontestable clauses have no application and the insurer can raise its defenses.

If, on the other hand, the trier of fact finds that plaintiff did not become disabled until more than two years after the policy was issued, then the incontestable clauses are fully applicable. The insurer would therefore be barred from contesting any of the health or financial statements in the application under Section 10.2(a) of the policy, and would be barred from denying the plaintiff's claim on the grounds of any pre-existing condition under Section 10.2(b). Moreover, if the trier of fact finds no disability during the two-year period, the insurer is also precluded from raising its Third Affirmative Defense that the claimed sickness did not first manifest itself after the date of issue.

This diversity Court makes these holdings while attempting to predict how the Indiana Supreme Court would interpret this particular clause, a clause which is specifically required by Indiana statute. This Court is convinced that rather than merely follow the so-called majority rule of other jurisdictions, some of which require somewhat different clauses, the Indiana Supreme Court would interpret and apply the plain and ordinary meaning of the language in question in this case and reach the same result.

IT IS SO ORDERED.