The **EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES**

v.

**Thomas E. BELL.**

**No. H92–153.**

United States District Court, N.D. Indiana, Hammond Division.

April 13, 1993.

---

Leonard M. Holajter, Friedrich, Bomberger, Tweedle & Blackmun, P.C., Highland, IN, for plaintiff.

Mark S. Lucas, Lucas, Holcomb & Medrea, Merrillville, IN, for defendant.

## ORDER

LOZANO, District Judge.

This matter is before the Court on Cross–Motions for Summary Judgment, filed by the Plaintiff in this declaratory judgment action, the Equitable Life Assurance Society of the United States ("Equitable"), and the Defendant, Thomas E. Bell ("Bell"). For the reasons stated herein, Equitable's Motion for Summary Judgment is **DENIED,** and Bell's Motion for Summary Judgment is **GRANTED.**

## BACKGROUND

The undisputed material facts of this insurance coverage dispute are as follows: On September 4, 1980, Bell applied to Equitable for a disability income policy. On October 20, 1980, Equitable issued its policy of disability income insurance No. 80709798 (the "insurance policy") to Bell with an effective date of October 14, 1980. Equitable agreed to pay benefits provided for loss resulting from injury or sickness as defined in the insurance policy. From September 4, 1980, to February 28, 1991, Bell paid all premiums due under the policy. On February 28, 1991, Bell became totally disabled from multiple sclerosis. Subsequently, on or about March 1, 1991, Bell submitted his statement of claim for disability benefits. Equitable has been making disability payments to Bell in accordance with the disability policy in the amount of $3,000 per month, and has paid to Bell all current monthly disability benefits to January 21, 1993, totaling $65,400.

Bell was first treated for multiple sclerosis in January 1978. In March 1978 Bell was advised for the first time by Dr. Floyd Davis that he suffered from multiple sclerosis. Prior to September 1, 1980, Bell had the following health problems or conditions which were related to his multiple sclerosis: Weakness, numbness, lack of dexterity in his hands, lack of depth perception, and/or hand/eye coordination, slurred speech, blurred vision, double vision, and loss of balance. Bell missed the first four months work in 1978 and ten days each in January 1979 and January 1980, while hospitalized at Rush Presbyterian St. Lukes Hospital for conditions related to multiple sclerosis.

Equitable was not aware of Bell's multiple sclerosis prior to the disability policy going into effect and did not become aware of Bell's multiple sclerosis condition until after Bell filed his claim for disability benefits on March 1, 1991. As such, Equitable contends that it has no obligation under the insurance policy to pay disability benefits, as Bell's multiple sclerosis manifested itself prior to

the time the disability policy was in force, and therefore is not a covered sickness under the terms of the policy.

Bell contends that by virtue of the insurance policy's incontestability clause, which will be discussed in depth below, Equitable is obliged under the policy to continue payments for Bell's disability resulting from multiple sclerosis.

The insurance policy contains the following relevant provisions:

On page one of the policy, Equitable "agrees, subject to the exceptions and to the further provisions of this policy, to pay the benefits provided for loss resulting from injury or sickness as defined on page two."

The policy further states:

## DEFINITIONS

**SICKNESS.** Sickness means sickness or disease of the Insured which first manifests itself while this policy is in force. **TOTAL DISABILITY.** Total disability means the complete inability of the Insured, because of injury or sickness, to engage in the Insured's regular occupation . . .

\* \* \* \* \* \*

## EXCEPTIONS

This policy will not cover any loss which is caused or contributed by any of the following:

1. injury occurring or sickness first manifesting itself prior to the effective date of coverage under this policy (subject to the second paragraph of the Incontestability provision on page six).

\* \* \* \* \* \*

## GENERAL PROVISIONS

**INCONTESTABILITY.** (a) After this policy has been in force for a period of two years during the lifetime of the Insured (excluding any period during which the Insured is disabled), it shall become incontestable as to the statements contained in the application.

(b) No claim for loss incurred or total disability (as defined in the policy) commencing after two years from the Date of Issue of this policy shall be reduced or denied on the ground that a disease or physical condition had existed prior to the effective date of coverage under this policy, unless, effective on the date of loss, such disease or physical condition was excluded from coverage by name or specific description.

Equitable contends that it is entitled to summary judgment because Bell's multiple sclerosis condition is not a covered sickness under the policy because it first manifested itself prior to the effective date of the policy. More specifically, Equitable's contention is that because the policy defines "sickness" as sickness or disease which manifests itself while the policy is in force, that because Bell's multiple sclerosis manifested itself before the policy was in force, Equitable never agreed to insure Bell against disability arising through his multiple sclerosis.

Bell, on the other hand, contends that he is entitled to disability benefits based on paragraph (b) of the incontestability provision appearing on page six of the policy, which states that no claim for total disability commencing after two years from the date of issue of the policy shall be denied on the ground that the disease or physical condition had existed prior to the effective date of coverage. Therefore, he contends that although his multiple sclerosis was a pre-existing condition, excluded from coverage by the policy, because he was not disabled until after two years from the date of issue of the policy, Equitable cannot now deny his claim. Therefore, he contends that he is entitled to summary judgment in this declaratory judgment action.

Thus, the issue before the Court today is whether Equitable's claim of lack of coverage is barred by the incontestability clause of the policy.

## DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *First Wis. Trust Co. v. Schroud,* 916 F.2d 394, 398 (7th Cir.1990). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir. 1991); see also *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the Court must read all facts in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Richardson v. Penfold,* 839 F.2d 392, 394 (7th Cir.1988).

■ The burden is upon the moving party to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, which it believes demonstrates an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once the moving party has met this burden, the nonmoving party may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might effect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir.1988) (citing *Anderson,* 477 U.S. at 250–252, 106 S.Ct. at 2511–2512).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be " 'no genuine issue as to any material fact', since a com-

plete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

*Contractual Interpretation*

Essentially, this diversity case is a coverage dispute which turns on contractual interpretation. As a diversity court, this Court must apply the law which would be applicable in the forum state. *Klaxon Company v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). It is undisputed that the applicable law is the law of Indiana. However, the parties and this Court have been unable to locate Indiana law which is instructive on the issue raised, and therefore, this Court must attempt to predict how the Indiana Supreme Court would resolve this issue. *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat'l Ins.,* 750 F.2d 619 (7th Cir.1984); *Heinhold v. Bishop Motor Express, Inc.,* 660 F.Supp. 382 (N.D.Ind.1987).

As stated above, this dispute concerns the interpretation of the insurance policy. Equitable argues that Bell's disease is not within the coverage of the policy because it did not first manifest itself after the date of issue of the policy. This claim is based on the policy provision which states that Equitable agrees to pay benefits provided for loss resulting from injury or sickness as defined within the contract, where sickness is defined as "sickness or disease of the insured which first manifests itself while this policy is in force." When read together, these provisions provide that Equitable agrees to pay benefits for loss resulting from sickness or disease which first manifests itself while the policy is in force. Because Bell's multiple sclerosis manifested itself before the policy was in force, Equitable contends that Bell's disability resulting from multiple sclerosis is not covered under the terms of the policy.

In Bell's Motion for Summary Judgment, he asserts that Equitable's defense is barred by paragraph (b) of the incontestability provision of the insurance policy, which states:

No claim for loss incurred or total disability (as defined in the policy) commencing after two years from the Date of Issue of

this policy shall be reduced or denied on the ground that a disease or physical condition had existed prior to the effective date of coverage under this policy, unless, effective on the date of loss, such disease or physical condition was excluded from coverage by name or specific description. This provision is required by Indiana law to be in all such insurance policies. *See* Ind. Code § 27–8–5–3(a)(2)(B). The incontestability provision in this clause is nearly identical to that required by the Indiana statute, except that here Equitable has shortened its incontestable period of two years from the maximum three years allowed by the statute. Bell argues that the plain language of this provision bars Equitable from denying his claim.

Equitable counters that despite this provision, Bell's disability due to multiple sclerosis is still not a covered sickness for which benefits are payable. Equitable contends that the incontestability provision provides only that no claim for total disability commencing after two years from the date of issue of the policy shall be denied on the ground that a disease or physical condition "existed" prior to the effective date of coverage. Seizing upon the semantic difference between the term "existed" as used in the incontestability provision, and "manifested" as used in the definition of the term "sickness", Equitable argues that the incontestability clause does not speak to the situation where a sickness manifests itself prior to the date of issue of the policy. In this situation, Equitable contends, the incontestability clause mandates coverage for disability commencing after two years from the date of issue of the policy for those sicknesses or diseases which existed prior to the effective date of coverage, but not for those diseases or sicknesses which manifest themselves prior to the date of coverage. Equitable argues that if a disease or sickness manifests itself prior to the date of coverage, but no claim for disability was made until after two years from the date of issue of the policy, the incontestability provision does not require that Equitable provide coverage for this disability.

Simply put, Equitable maintains that the general coverage provisions of the insurance policy can be read in conjunction with the incontestability provision to provide that if a claim for disability is made two years after the date of issue of the policy for a sickness or disease which existed prior to the effective date of coverage, but the insured did not know of the disease or sickness, then the insurer must pay, but if a claim for disability is made after two years from the date of issue of the policy and the insured knew of his disease or sickness (because it had manifested itself), the insurer does not have to pay.

As stated above, Indiana courts have not ruled on this exact issue. As such, it is the duty of this diversity court to predict how the Indiana Supreme Court would resolve this issue. In making this decision, the Court is aided by the interpretations of other courts construing similar incontestability clauses in analogous insurance policies. While these opinions are instructive, this Court must be guided by general rules of contract interpretation applicable in Indiana.

■ "The general rule in interpreting insurance contracts, and all other contracts of adhesion, is that, in the normal case, the court must simply apply the plain ordinary meaning of the contract language." *Comprehensive Health Ins. Ass'n v. Dye*, 531 N.E.2d 505, 507 (Ind.Ct.App.1988). While it is true that ambiguity in an insurance contract is usually resolved in favor of the insured, *Mutual Hosp. Ins., Inc. v. Klapper*, 262 Ind. 144, 312 N.E.2d 482, 483 (1974), where the ambiguity results from a clause required by statute this presumption does not exist and normal rules of construction apply. This is so because, as opposed to the other provisions of an adhesion contract, the inclusion of a clause mandated by statute is not the result of the insurer's superior bargaining power. *Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F.Supp. 995, 1001 (S.D.Ind.1989) (citing *Ebner v. Ohio State Life Ins. Co.*, 69 Ind.App. 32, 121 N.E. 315, 319 (1918)); *see also* Annotation, *Construction of Incontestable Clause Applicable to Disability Insurance*, 13 A.L.R.3d 1383, 1389 (1967) (ambiguity in incontestability clause is ordinarily construed most favorably to the insured unless the clause is required by statute and follows the

language of the statute, in which case the usual rules of statutory construction apply).

In construing this incontestability clause, this Court is guided by the Appellate Court of Indiana which stated that the incontestability clause, "while prescribed by statute, derived its force from the consent of the parties to it as a part of a contract; hence it should be construed as a contract, rather than a statutory provision; its origin, however, being kept in view." *Ebner*, 121 N.E. at 319. This Court, then "must apply the plain and ordinary meaning of the clause's language, mindful that the clause was the result of a specific statutory directive." *Wischmeyer*, 725 F.Supp. at 1001.

This Court finds the analysis employed by Judge McKinney of the Southern District of Indiana in *Wischmeyer* to be extremely persuasive. Especially because this is the only decision which addresses Indiana law on the exact issue at bar, this Court is guided by Judge McKinney's reasoning that the language of the incontestability clause permits no other reading but that after two years elapses, the insurer cannot deny coverage on the basis of a pre-existing condition.

Set forth again for reference, paragraph (b) of the incontestability clause provides:

> (b) No claim for loss incurred or total disability (as defined in the policy) commencing after two years from the Date of Issue of this policy shall be reduced or denied on the ground that a disease or physical condition had existed prior to the effective date of coverage under this policy, unless, effective on the date of loss, such disease or physical condition was excluded from coverage by name or specific description.

The last clause of this paragraph is immaterial to the case at bar, as multiple sclerosis was not a condition excluded from coverage by name or specific description. Accordingly, for purposes of this Motion, the clause can be redacted and simplified as follows:

> No claim for ... total disability (as defined in the policy) commencing after two years from the Date of Issue of this policy shall be ... denied on the ground that a disease or physical condition had existed prior to

the effective date of coverage under this policy. . . .

■ Sitting in diversity, this Court must apply Indiana law, and thereby "must simply apply the plain and ordinary meaning of the contract language." *Dye*, 531 N.E.2d at 507. Given this directive, the Court concludes that the language of this provision is unambiguous, and that its plain ordinary meaning is that no claim will be denied after two years because of a pre-existing condition. By its plain language, the clause does not allow, after two years has elapsed, the defense against coverage that the insured suffered from a pre-existing condition. This construction "clearly reflects a legislative mandate that if an insured is not disabled for two years after issuance of a policy, then his claim for benefits cannot be denied on the grounds that he had a pre-existing condition." *Wischmeyer*, 725 F.Supp. at 1001.

The interpretation urged by Equitable does not give this clause its plain meaning. Instead, Equitable argues that in order to reconcile this clause with the definition of sickness contained on page two of the insurance policy as "sickness or disease of the insured which first manifests itself while the policy is in force," this Court must focus on the semantic difference between the terms "exist" as used in the incontestability provision, and "manifest" as used in the definition of sickness. Equitable urges that in order to give the definition of sickness its full meaning, *i.e.*, that the policy only covers sicknesses which first manifest themselves while the policy is in force, this Court should construe the term "exist" as used in the incontestability provision to cover only those sicknesses which existed prior to the date of issue, but which were unknown to the insured because they did not manifest themselves. As such, Equitable claims that since Bell's multiple sclerosis manifest itself and was known to Bell in 1978, it is not covered by the incontestability clause, and therefore is not covered to begin with under the insurance policy. Equitable argues that the incontestability provision cannot create coverage where none exists under the general provisions of the insurance policy.

Although this Court is mindful that many courts have adopted Equitable's view that such clauses do not affect the scope of coverage, *see e.g. Button v. Connecticut General Life Ins. Co.,* 847 F.2d 584 (9th Cir.1988); *Keaten v. Paul Revere Life Ins. Co.,* 648 F.2d 299 (5th Cir.1981); *Massachusetts Casualty Ins. Co. v. Forman,* 516 F.2d 425 (5th Cir. 1975), this Court cannot agree. The semantic differences between policy terms that these courts seize upon can be given little effect in light of the Indiana General Assembly's mandate that no claim will be denied after two years because of a pre-existing condition. "Thus, to the extent that any policies of insurance define disability in terms of sickness manifesting itself after the issuance of the policy, or that otherwise attempt to exclude from coverage any disability stemming from a pre-existing condition, those policies are in direct conflict with the mandate of the legislature once two years has passed." *Wischmeyer,* 725 F.Supp. at 1003.

By choosing language which differs from the statutorily required incontestability clause, and then pointing out the definitional differences between terms that are statutorily required, and terms which are inserted into the contract at the behest of the insurer, Equitable "attempts to nullify the protection of the incontestable clause by excluding from coverage illness which manifests itself before the policy is issued." *Fischer v. Massachusetts Cas. Ins. Co.,* 458 F.Supp. 939, 945 (S.D.N.Y.1978). Such an interpretation would controvert the statutorily imposed incontestability clause, and reduce its protection below that which was mandated by the legislature.

Accordingly, this Court must hold that Equitable is obliged under the insurance policy to continue payments for Bell's disability resulting from multiple sclerosis. Paragraph (b) of the incontestability clause of the insurance policy bars Equitable's defense that Bell's total disability resulting from this multiple sclerosis is not covered by the insurance policy.

This Court's decision is bolstered by the history and policy behind incontestability clauses. "The legislative history of the in-contestable clause shows that it is designed to encourage insurance buyers to purchase insurance with confidence that after the contestable period has passed they are assured of receiving benefits if they are disabled." *Fischer,* 458 F.Supp. at 944. The rationale for the introduction of incontestability clauses in insurance policies is set forth by one authority as follows:

The explanation lies in the early greed and ruthlessness of the insurers. All too often, instead of paying the beneficiary, they resisted liability stubbornly on the basis of some misstatement made by the insured at the time of applying for the policy, as to which they carefully refrained from comment until the insured had died and was unable to testify on his own behalf.... The effect of such cases ... was to create the impression on the public mind that a contract of life insurance was a one-sided affair, and was simply a scheme on the part of designing individuals and corporations to secure to themselves the earnings of others.... This prevailing impression ... was calculated to make people, as a rule, indisposed to enter into contracts of life insurance....

This evil worked its own correction. Often forced to abandon this objectionable practice by impatient legislatures ... but more often spurred by the obvious and increasing sales resistance among prospects to whom insurance agents sought to sell insurance, most life insurance companies today, voluntarily or by statutory compulsion, incorporate incontestable clauses in their policies.

7 Williston on Contracts § 912.394–95 (3d ed. 1963).

Another authority has stated that incontestability clauses are designed "to require the insurer to investigate an act with reasonable promptness if it wishes to deny liability on the ground of false representation or warranty by the insured. It prevents an insurer from lulling the insured, by inaction, into fancied security during the time when the facts could best be ascertained and proved, only to litigate them belatedly, possibly after the death of the insured." G. Couch, 18 *Couch on Insurance* § 72:2 at 283–84 (1983).

Such clauses "are generally regarded as valid, being neither unreasonable nor against public policy." *Id.* § 72:3 at 284. The Seventh Circuit has explained that such clauses are "in the nature of a statute of limitation and repose, and while conscious fraud practiced in inducing another to act, to his detriment, is extremely obnoxious, yet the law recognizes that there should be a limitation of time in which an action may be brought or a defense set up." *Columbian Nat'l Life Ins. Co. v. Wallerstein,* 91 F.2d 351, 352 (7th Cir.1937).

As the validity of such clauses has long been recognized in Indiana, *see Indiana Nat'l Life. Ins. Co. v. McGinnis,* 180 Ind. 9, 101 N.E. 289, 291 (1913); *Rex Ins. Co. v. Baldwin,* 163 Ind.App. 308, 323 N.E.2d 270, 273–74 (1965), this Court is compelled to give full effect to the mandate of the legislature, by recognizing the legislative intent to protect insureds by prohibiting an insurer from denying a claim on the ground that an insured had a pre-existing condition, once the incontestability period has elapsed.

CONCLUSION

It is the conclusion of this Court that Equitable may not claim that Bell's disability is barred from coverage. Paragraph (b) of the incontestability clause of the insurance policy prohibits such a defense. Accordingly, Equitable's Motion for Summary Judgment is **DENIED.** Bell's Motion for Summary Judgment is **GRANTED,** and the Court finds, consistent with the insurance policy, that Equitable is required to continue to make disability payments to Bell in the amount of $3,000 per month so long as Bell's disability resulting from multiple sclerosis continues.