266 N.J. Super. 35 (1993)
628 A.2d 772
THE PAUL REVERE LIFE INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
GILBERT K. HAAS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 1993.
Decided July 7, 1993.
*36 Before Judges GAULKIN, HAVEY and STERN.
Robert Wright argued the cause for appellant (Melli & Wright, attorneys; Mr. Wright and Cynthia Dokas on the brief).
Brian T. Campion argued the cause for respondent (Herten, Burstein, Sheridan & Cevasco, attorneys; Mr. Campion on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
Plaintiff Paul Revere Life Insurance Company appeals from a summary judgment dismissing its complaint against its insured, defendant Gilbert K. Haas. The gravamen of plaintiff's complaint is that its disability insurance policy issued to defendant should be rescinded because of material misrepresentations made by him in his application for insurance. Alternatively, plaintiff seeks a *37 declaration that the policy does not cover defendant's medical condition, retinitis pigmentosa. In dismissing plaintiff's complaint, the trial court concluded that the policy's incontestability clause barred plaintiff's action. The incontestability clause provides:
10.2 INCONTESTABLE
a. After Your Policy has been in force for two years, excluding any time You are disabled, We cannot contest the statements in the application.
b. No claim for loss incurred or disability beginning after two years from the Date of Issue will be reduced or denied because a disease or physical condition existed before the Date of Issue unless it is excluded by name or specific description.
We hold that the incontestability clause bars an action to rescind instituted after two years from the inception of the policy, even if the insured's representations are fraudulent. We also conclude that the clause precludes the carrier from denying coverage based on the policy's definition of "sickness" and on its preexisting condition exclusion. However, if defendant becomes disabled during the period of contestability, part (a) of the incontestability clause, by its terms, tolls the running of the two-year period, and part (b) has no application. We therefore affirm in part, but reverse in part for a determination as to when defendant became disabled.
On January 20, 1987, defendant applied for disability insurance with plaintiff. In response to questions in the application concerning his "medical history," he answered that he was not under observation or treatment, had not be examined by or consulted a physician in the last five years, and never had any known indication of, or been treated for, any disease or impairment of the eyes. Defendant also answered "no" to the question: "Has any person had any surgical operation, treatment, special diet, or any illness, ailment, abnormality, or injury, not mentioned above, within the past five years?" On March 5, 1987, plaintiff issued the disability policy to defendant.
On December 1, 1990, defendant notified plaintiff of his intention to file a disability claim. On January 7, 1991, he executed a proof of claim form, stating that on December 1, 1990, he became *38 totally disabled as a result of retinitis pigmentosa, a loss of central vision. Defendant also submitted a "disability attending physician statement," completed by Dr. Leo Masciulli, stating that defendant's symptoms first appeared on November 1, 1989. Dr. Masciulli responded "yes" to the question: "Has patient ever had same or similar condition?" and listed "Dr[s]. Sidarsky [sic] & Poole [New York City] 1985" as defendant's treating physicians. Dr. Masciulli also reported that when defendant came to him on November 1, 1990, he was seeking a "second opinion."
Plaintiff's investigation of the claim revealed that beginning on October 20, 1983, defendant had been evaluated in the New York University Retinal Clinic. Dr. Ronald E. Carr, one of defendant's physicians, stated in a letter to Dr. Sudarsky dated August 9, 1984, that defendant "had been told of retinitis pigmentosa in the past and indeed shows findings quite typical for this problem." It is also undisputed that defendant's medical records, dating back to 1985, disclosed that he has had a history of retinitis pigmentosa since at least that date. On or about October 17, 1991, plaintiff filed the present complaint.
For the purposes of defendant's summary judgment motion, he admitted that his misrepresentations in the application were fraudulent. The trial judge nevertheless granted the motion, concluding:
I don't find that there is any way that you can get around the fact that [defendant] fits right into the mold of the person who is [saved] by the incontestable clause, and I find that the clause applies and the insurance company has to go through on it.

I
Plaintiff acknowledges that it instituted its action beyond two years after issuance of the policy. Nevertheless, relying on Johnson v. Metropolitan Life Ins. Co., 53 N.J. 423, 251 A.2d 257 (1969), plaintiff argues that the clause pertains only to equitable fraud, and does not bar an action based, as here, on a claim of legal fraud.
*39 In Johnson, the disability policy contained the following incontestability clause:
Time Limit on Certain Defenses: (a) After two years from the date of policy no misstatements, except fraudulent misstatements, made by the applicant in the application for this Policy shall be used to void this Policy or to deny a claim for loss incurred or disability (as defined in this Policy) commencing after the expiration of such two year period.
[Id. at 436 (emphasis added).]
This clause essentially tracked the statutory language required to be inserted in policies under N.J.S.A. 17:38-13.2(A) (now repealed). The Court rejected the insurer's argument that the phrase "except fraudulent misrepresentations" preserves the concept of equitable fraud beyond the contestability period, reasoning that "the provision can have no significance" unless the phrase "requires an intent to deceive." 53 N.J. at 438, 251 A.2d 257. It noted that a contrary interpretation would frustrate the apparent intent of the clause "to improve the position of the insured." Ibid. Thus, it concluded "the statute... boils down to the proposition that after two years the policy may not be voided for a misstatement in the application unless the misstatement is `fraudulent' as we have defined the word...." Id. at 441, 251 A.2d 257 (emphasis added). Since the insured's misrepresentation on his application was not made with intent to deceive, the insurer's attempt to rescind was barred because it came after expiration of the two-year period. Id. at 443, 251 A.2d 257.
What is fatal to plaintiff's argument is that Johnson involved a different incontestability clause than the clause pertinent here. N.J.S.A. 17B:26-5 requires that all health insurance policies contain one of two incontestability clauses:
a. After 2 years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability ... commencing after the expiration of such 2-year period.
....
[or]
(2) A policy which the insured has the right to continue in force subject to its terms by the timely payment of premium (a) until at least age 50 or, (b) in the case of a policy issued after age 44, for at least 5 years from its date of issue, may *40 contain in lieu of the foregoing the following provision (from which the clause in parentheses may be omitted at the insurer's option) under the caption "INCONTESTABLE":
After this policy has been in force for a period of 2 years during the lifetime of the insured, (excluding any period during which the insured is disabled) it shall become incontestable as to the statements contained in the application.
b. No claim for loss incurred or disability ... commencing after 2 years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss and existed prior to the effective date of coverage of this policy.
Plaintiff chose the incontestability clause under N.J.S.A. 17B:26-5a(2) which does not contain the "except fraudulent misrepresentations" phrase. By opting for the clause under § 5a(2), plaintiff elected to forego preserving its indefinite right to rescind the policy based on legal fraud. We can only assume it did so because it gained the benefit of the phrase "excluding any time You are disabled," which tolls the two-year period during the time the insured is disabled. In any event, the analysis under Johnson is clearly not dispositive. We would contravene the clear meaning of the policy, and indeed the statute, were we to graft the "except fraudulent misrepresentations" phrase upon the clause pertinent here. See Massachusetts Mut. Life Ins. Co. v. Manzo, 122 N.J. 104, 112, 584 A.2d 190 (1991). The clause must be interpreted as plainly written and as required by statute. Ibid. Since plaintiff instituted its action after the policy was in force for two years, it "cannot contest the statements in the application" even if made with intent to deceive. See Lindsay v. United States Life Ins. Co., 80 N.J. Super. 465, 470, 194 A.2d 31 (Law Div. 1963) (incontestability clause, which does not contain "except fraudulent misrepresentations" phrase, bars even claims of legal fraud after the contestability period has lapsed).

II
As stated, part (b) of the incontestability clause, provides:
No claim for loss incurred or disability beginning after two years from the Date of Issue will be reduced or denied because a disease or physical condition existed before the Date of Issue unless it is excluded by name or specific description.
*41 Plaintiff contends that part (b) has no effect where the remedy sought is the denial of coverage, rather than rescission of the policy. It first points to the fact that a "sickness" covered by the policy is defined as one "which first manifests itself after the Date of Issue and while Your Policy is in force." Plaintiff argues that since defendant's retinitis pigmentosa manifested itself prior to the effective date of the policy, there is no "sickness" and hence no coverage. Alternatively, it claims that it may deny coverage under the preexisting condition exclusion, which provides "[w]e will not pay benefits for a Pre-existing Condition if it was not disclosed on Your application."
Many out-of-state cases and authorities support plaintiff's argument that, despite the passage of the contestable period, the carrier may deny a claim if not covered, or if excluded by a preexisting condition clause. See Button v. Connecticut Gen. Life Ins. Co., 847 F.2d 584, 588 (9th Cir.), cert. denied, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 250 (1988); Keaten v. Paul Revere Life Ins. Co., 648 F.2d 299, 301 (5th Cir. Unit B Aug. 1981); Massachusetts Casualty Ins. Co. v. Forman, 516 F.2d 425, 428-29 (5th Cir.1975), cert. denied, 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976); see also Annotation, Construction of Incontestable Clause Applicable to Disability Insurance, 13 A.L.R.3d 1383, 1392-97 (1967); 18 George J. Couch, Couch on Insurance, § 72:65 (2d ed. 1983). For example, applying Georgia law, the Fifth Circuit in Keaten held that after the period of contestability has run under a disability policy, "the insurer is only barred from contesting the validity of the policy itself, e.g., on grounds of fraud in the procurement, etc.... It still reserves the right to deny any claim if it is not within the coverage as stated under the policy's terms." 648 F.2d at 301.
Similarly, in Forman, the Fifth Circuit held that the "first manifestation" provision in the definition of "sickness" entitled the carrier to deny coverage because the insured's sickness first manifested itself prior to the issuance of the policy, despite the passage of the two-year period under the incontestability clause. *42 516 F.2d at 429. The court acknowledged that the clause provided that no claim for disability commencing after two years from the date of issue of the policy shall be denied on the ground that a disease or physical condition existed prior to the effective date of the policy. Ibid. However, it reasoned that this clause did not bear upon coverage because it
only prohibits denials of claims based on the prior existence of a disease. Such denials are irrelevant here because a disease is covered no matter when it existed, so long as it was not first manifested prior to the policy date. Thus subparagraph B has no effective field of operation. Giving it some scope of operation by reading "existed" as "existed and manifested" goes beyond the language of the clause and is contrary to the general principle that incontestable clauses do not operate to extend coverage beyond that contracted for.
[Ibid.]
There is persuasive authority expressing a contrary view. See Provident Life & Accident Ins. Co. v. Altman, 795 F. Supp. 216, 221-22 (E.D.Mich. 1992); Wischmeyer v. Paul Revere Life Ins. Co., 725 F. Supp. 995, 1003 (S.D.Ind. 1989); Fischer v. Massachusetts Casualty Ins. Co., 458 F. Supp. 939, 944-45 (S.D.N.Y. 1978); see also Annotation, supra, at 1397-98. In Wischmeyer, the court had before it an incontestability clause drafted in accordance with an Indiana statute, which is essentially the same as the clause involved here. The court rejected the carrier's argument that the insured's preexisting condition was not covered because it did not "manifest" itself during the policy period. 725 F. Supp. at 1003-04. It found that the clause, as interpreted, strikes a "clear balance based on policy reasons, and to allow coverage provisions of a policy to prevail over the statutorily required clauses is to thwart the mandate of the legislature." Id. at 1004.
We find Wischmeyer's reasoning persuasive and consistent with New Jersey's settled rules concerning the construction of insurance contracts. An insurance policy should "be read as the ordinary policyholder would understand it." Kissil v. Beneficial Nat'l Life Ins. Co., 64 N.J. 555, 561, 319 A.2d 67 (1974); see also Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 488, 170 A.2d 22 (1961) ("the court's goal in construing an accident insurance policy is to effectuate the reasonable expectations of the average member *43 of the public who buys it"). Also, because insurance policies are contracts of adhesion and not readily understood, courts resolve ambiguities in such contracts against insurance companies, "and in line with an insured's objectively-reasonable expectations." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992); see also Sparks v. St. Paul Ins. Co., 100 N.J. 325, 336, 495 A.2d 406 (1985). Indeed, our Supreme Court has observed that "if an insured's `reasonable expectations' contravene the plain meaning of a policy, even its plain meaning can be overcome." Voorhees, 128 N.J. at 175, 607 A.2d 1255; Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 35-36, 548 A.2d 188 (1988).
We believe that the ordinary insured would read part (b) of the incontestability clause as subsuming any disclaimer by the carrier that the sickness "first manifest[ed] itself" prior to the inception of the policy. The clause cannot be any clearer: if the disability begins two years after the date of issue, the claim cannot be "denied" because a disease or physical condition "existed before the Date of Issue." Keaten's holding that the clause bars only an action for rescission is unavailing, since the word "denied" must sensibly include not only actions for rescission, but a "denial" of coverage when that denial is based on a preexisting condition. In our view, parts (a) and (b) of the incontestability clause strike a fair balance: the carrier may seek rescission or deny coverage at any time during the two-year period, and even after if, during the contestability period the insured becomes disabled. But if the insured becomes disabled after expiration of the contestability period, the carrier is barred from raising any challenge, by way of rescission or "denial" of coverage, if the challenge is predicated on the insured's preexisting condition.
We also reject the subtle distinction made by the Forman court between the terms "existence" and "manifested." Nowhere in the incontestability clause is the term "manifest" used. Therefore, the ordinary insured would not know, as plaintiff suggests, that the clause does not mean what it says by virtue of the phrase "first manifested" used in another policy provision. See Wischmeyer, *44 725 F. Supp. at 1003-04. Also, we question whether a reasonable insured would grasp the subtle distinction between the two words, even if a distinction exists. Finally, plaintiff's argument frustrates the underlying purpose of the incontestability clause: "to put a checkmate upon litigation," 1A John A. Appleman & Jean Appleman, Insurance Law & Practice § 311, at 311 (1981), and "to give the insured a sense of security after the stated period elapses." Johnson, 53 N.J. at 442, 251 A.2d 257.
The same is true with respect to the preexisting condition clause which, as stated, reads "We will not pay benefits for a Pre-existing Condition if it was not disclosed on Your application." If the clause may be interpreted to permit denial of coverage for a disability beginning after two years from the date of issue, it is in direct conflict with N.J.S.A. 17B:26-5b, which unambiguously states that no such claim "shall be ... denied on the ground that a disease or physical condition ... existed" before the date of issue. (emphasis added). See N.J.S.A. 17B:26-25 (any policy provision conflicting with applicable statute shall be deemed amended to conform with statute). There is at least, in reading the incontestability and preexisting condition clauses together, an ambiguity which must be construed in favor of the insured. See Werner, 112 N.J. at 35, 548 A.2d 188; Altman, 795 F. Supp. at 223. We therefore conclude that if defendant's disability began after the expiration of the two-year period, plaintiff may not deny coverage based on defendant's preexisting condition.

III
Although we reject plaintiff's arguments concerning the incontestability clause and its right to deny coverage, we agree that summary judgment was improperly granted. As stated, part (a) of the incontestability clause provides that "[a]fter your policy has been in force for two years, excluding any time You are disabled, We cannot contest the statements in the application." (emphasis added). There has been no discovery in this case, and thus summary judgment has prevented plaintiff from inquiring into *45 defendant's health since the date of the issuance of the policy, March 5, 1987. In view of the unquestioned manifestations of symptoms prior to December 1, 1990, and defendant's prior treatment dating back to 1985, plaintiff may well establish that defendant's disability commenced during the two-year contestability period. If so, the contestability bar under paragraph (a) would be tolled. See Wischmeyer, 725 F. Supp. at 998.
Defendant's argument that Johnson should be read to invalidate the tolling provision is without merit, since Johnson did not involve an incontestability clause with tolling language. Moreover, defendant's argument would have us nullify statutory language. It would also lead to an unjust result. Since the incontestability clause does not have the "except for fraudulent misstatements" phrase, the insured could misrepresent with intent to deceive in his application, wait two years and one day to file a claim despite his intervening disability, thus immunizing himself from challenge by the carrier. Such a result would effectively condone fraud.
When defendant became disabled is also important in determining whether subparagraph (b) of the incontestability clause bars plaintiff's challenge. If the facts establish that defendant was disabled during the two-year period, then part (b) of the incontestability clause has no application, and the insurer can raise its defenses. See Wischmeyer, 725 F. Supp. at 1005. If on the other hand, defendant did not become disabled until more than two years after the policy was issued, then part (b) is fully applicable. Ibid. Plaintiff should have the opportunity to develop its proofs with respect to this issue through discovery.
Affirmed in part; reversed and remanded in part.