**EQUITABLE LIFE ASSURANCE SO-CIETY OF the UNITED STATES, Plaintiff–Appellant,**

v.

**Thomas E. BELL, Defendant–Appellee.**

No. 93–2264.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1993.

Decided June 28, 1994.

Leonard M. Holajter, Friedrich, Bomberger, Tweedle & Blackmun, Highland, IN (argued), for plaintiff-appellant.

Mark S. Lucas, Nick Katich (argued), Lucas, Holcomb & Medrea, Merrillville, IN, for defendant-appellee.

Before LAY,* COFFEY, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

The Equitable Life Assurance Society of the United States ("Equitable") filed this diversity action seeking a declaratory judgment that it was not obliged to pay Thomas Bell disability benefits. Equitable relied on the fact that Mr. Bell's multiple sclerosis had manifested itself before Equitable issued a disability insurance policy to him. The district court granted summary judgment in favor of Mr. Bell in view of the policy's statutorily mandated incontestability clause. *Equitable Life Assurance Soc'y of United States v. Bell*, 818 F.Supp. 245 (N.D.Ind. 1993). That clause provides that after the policy has been in force for two years, a claim for benefits cannot be denied on the ground that the underlying disease or condition existed prior to the effective date of the policy. We affirm.

## I. FACTS

In March of 1978, Mr. Bell learned that he had multiple sclerosis, a progressive disease of the central nervous system with no known cure. His symptoms at that time and over the following two years included weakness, numbness, lack of manual dexterity, lack of depth perception and/or hand-eye coordination, slurred speech, blurred and double vision, and loss of balance. He was hospitalized (and thus absent from work) for four months in 1978 and for ten days in both 1979 and 1980 for testing and treatment. Dr. Floyd Davis, who first apprised Mr. Bell that he had multiple sclerosis, recalls that one of Mr. Bell's principal concerns upon learning of his affliction was the prospect of becoming disabled. He is also certain that he discussed this possibility with Mr. Bell on at least one occasion in 1978.

On September 4, 1980, more than two years after his illness was diagnosed, Mr. Bell applied to Equitable for an insurance policy providing for payments of $3,000 per month in the event he became disabled. The second portion of the application solicited information regarding Mr. Bell's medical history. As completed, this section contained the following representations:

2. a. Name and address of personal physician (or medical facility used instead):
 (*If none, so state*) NONE
 b. Date and reason last consulted if within the last 5 years: (Blank)
 c. What treatment was given or recommended:
 (*If none, so state* (Blank)

3. Has Proposed Insured ever been treated for or ever had any known indication of:
 (*Circle items that apply*) Yes No

 . . .

 b. Dizziness, fainting, convulsions; paralysis or stroke; psychiatric, psychological or emotional problem or disturbance; mental or nervous disease or disorder? X

4. Is Proposed Insured now under observation or taking treatment? X

 . . .

6. Other than as stated in answers to Questions 2–5, has Proposed Insured within the last 5 years:
 a. Consulted or been examined or treated by any physician or practitioner? X
 b. Had any illness, injury, or surgery? X
 c. Been a patient in or been examined or treated at a hospital, clinic, sanatorium, or other medical facility? X
 d. Had electrocardiogram, X-ray, or other diagnostic test? X
 e. Been advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed? X

---

* The Honorable Donald P. Lay, of the Eighth Circuit, sitting by designation.

App. 28. As the foregoing answers make rather obvious, Mr. Bell did not reveal that he suffered from multiple sclerosis. Indeed, beyond noting an allergy to sulfa drugs (*id.*), Mr. Bell disclosed nothing adverse about his medical history.[1] Equitable subsequently approved the application and issued a policy effective October 14, 1980.

On March 1, 1991, Mr. Bell submitted a claim for benefits to Equitable, indicating that he had become completely disabled by multiple sclerosis.[2] In the course of investigating the claim, Equitable learned that Mr. Bell had been diagnosed with the disease before he applied for the policy. That discovery prompted the company to file this suit seeking a declaration that the policy did not cover Mr. Bell's disability because his multiple sclerosis had manifested before the policy was issued. In the interim, Equitable has paid Mr. Bell monthly disability payments of $3,000.

The insurance policy that Equitable issued to Mr. Bell contains a number of provisions pertinent to coverage for illnesses that existed before the policy was issued. At the outset, the policy indicates that Equitable "[a]grees, subject to the exceptions and to the further provisions of this policy, to pay the benefits provided for loss resulting from injury or sickness *as defined on page two.*" App. 18 (emphasis supplied). "Injury" and "sickness" are then defined on the following page as follows:

INJURY. Injury means accidental bodily injury of the Insured occurring while the policy is in force.

SICKNESS. Sickness means sickness or disease of the Insured *which first manifests itself while the policy is in force.* App. 19 (emphasis supplied). Echoing the limited definition of "sickness," the section of the policy dealing with "EXCEPTIONS" provides:

This policy will not cover any loss which is caused or contributed to by any of the following:

1. Injury occurring or *sickness first manifesting itself prior to the effective date of coverage* under this policy (subject to the second paragraph of the Incontestability provision on page six);....

App. 20 (emphasis supplied). The incontestability clause of the policy in turn provides:

INCONTESTABILITY

(a) After this policy has been in force for a period of two years of the lifetime of the Insured (excluding any period during which the Insured is disabled), *it shall become incontestable as to the statements contained in the application.*

(b) *No claim for loss incurred or total disability (as defined in the policy) commencing after two years from the Date of Issue of this policy shall be reduced or denied on the ground that a disease or physical condition had existed prior to the effective date of coverage under this policy, unless, effective on the date of the loss, such disease or physical condition was excluded from coverage by name or specific description.*

App. 21 (emphasis supplied). Paragraphs (a) and (b) are provisions that the Indiana legislature has required for all disability policies. *See* Ind.Code Ann. § 27–8–5–3(a)(2)(A), (B) (Burns 1992).[3] The appropriate construction

---

1. We should point out that Mr. Bell contends that he disclosed his multiple sclerosis to the Equitable agent who helped to complete his application and that Equitable consequently is estopped from denying coverage. *See* R. 22, Aff. of Thomas E. Bell ¶¶ 6–8; *see also* R. 25, Dep. of Edward Bell at 12–14, 20–22, 34–49, 51–53. Equitable and its agent deny any prior knowledge of Mr. Bell's condition. R. 15, Aff. of Leonard A. Harris ¶ 3; Dep. of James H. Stump at 17–18, 36, 43. Our interpretation of the policy terms renders it unnecessary for us to consider this issue.

2. Beginning in 1982, Mr. Bell had worked for Southlake Steel Corporation, of which his father was then president and part-owner. At his deposition, Dr. Davis ventured that had Mr. Bell not been employed by this company, he might have been forced to discontinue working much sooner than he ultimately was. Dep. of Dr. Floyd A. Davis at 30–32.

3. As we note below, however, Indiana affords insurance companies a choice between two different versions of subparagraph (a). *See infra* at 1279.

of paragraph (b) in particular lies at the heart of the parties' dispute.

Mr. Bell contends that whatever else the policy may say about illnesses that manifest themselves prior to the effective date of the policy, paragraph (b) mandates coverage after two years regardless of when the disease may have first manifested. Equitable responds by pointing out that the scope of coverage is limited at the outset of the policy to disabilities resulting from sicknesses that first manifest themselves *after* the effective date. Thus, in Equitable's view, no subsequent provision can be construed to broaden the coverage to include pre-manifesting illnesses. In order to construe paragraph (b) appropriately, Equitable argues, one must distinguish pre-*existing* illnesses from pre-*manifesting* illnesses. Equitable's interpretation would require it to cover a disability springing from an illness that existed prior to the policy's effective date, but was not yet evident. If, on the other hand, the illness had displayed itself before the policy went into effect, Equitable would not be obliged to cover the resulting disability.

The district court adopted Mr. Bell's construction of the contract. In deference to what he believed was the plain and ordinary meaning of paragraph (b), Judge Lozano concluded that after two years, Equitable was obliged to cover a disability even if, as here, the underlying cause had manifested itself in advance of the policy's effective date. *Bell*, 818 F.Supp. at 250–51. The district judge saw Equitable's attempt to distinguish between pre-manifesting and pre-existing conditions as no more than a semantic argument which, if endorsed, would run afoul of what he deemed the Indiana General Assembly's intent to require coverage for any pre-existing illness after two years. *Id.* at 250–51.

> "Thus, to the extent that any policies of insurance define disability in terms of sickness manifesting itself after the issuance of the policy, or that otherwise attempt to exclude from coverage any disability stemming from a pre-existing condition, those policies are in direct conflict with the legislature once two years has passed."

*Id.* at 251 (quoting *Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F.Supp. 995, 1003 (S.D.Ind.1989) (McKinney, J.)).

## II. ANALYSIS

 This appeal turns on the appropriate construction of the insurance policy's incontestability provisions and their effect on the scope of the policy, which otherwise does not cover disabilities resulting from pre-manifesting illnesses. That is, does the statutorily required language compel coverage of disabilities resulting from diseases that manifested themselves before the policy was issued, even if other policy terms define disabilities to exclude such diseases from the scope of the policy? This is a question of law that we examine de novo. *See National Wrecking Co. v. St. Paul Surplus Lines Ins. Co.*, 11 F.3d 685, 687 (7th Cir.1993); *Preze v. Board of Trustees, Pipefitters Welfare Fund Local 597*, 5 F.3d 272, 274 (7th Cir.1993).

The parties agree that this suit is governed by the law of the forum state, Indiana. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Soo Line R.R. Co. v. Overton*, 992 F.2d 640, 643 (7th Cir.1993); *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 882 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2994, 125 L.Ed.2d 688 (1993). However, the Indiana courts have not yet considered the precise question we confront here. We must therefore do our best to predict how the Indiana Supreme Court would resolve the issue. *Northern Assurance Co. of America v. Summers*, 17 F.3d 956, 964 (7th Cir.1994).

Our inquiry begins with section 27–8–5–3 of the Indiana Code, the source of the incontestability clause. Section 3(a)(2)(A) requires the insurer to insert one of two clauses into the policy limiting the insurer's ability to rely on misstatements contained in the insured's application as a ground for rescinding the policy or denying a claim:

TIME LIMIT ON CERTAIN DEFENSES:

After three (3) years from the date of issue of this policy no misstatements, *except fraudulent misstatements*, made by the applicant in the application for such policy

shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such three (3) year period.

*or*

INCONTESTABLE:

After this policy has been in force for a period of three (3) years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application.

Ind.Code Ann. § 27–8–5–3(a)(2)(A) (emphasis supplied).[4] Notably, Equitable opted for the second version, which lacks the exception for fraudulent misstatements.[5] Section 3(a)(2)(B) goes on to require a further provision:

No claim for loss incurred or disability (as defined in the policy) commencing after three (3) years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition, not excluded from coverage by name or specific description effective on the date of the loss, had existed prior to the effective date of coverage of this policy.

Ind.Code Ann. § 27–8–5–3(a)(2)(B). These two provisions are incorporated into paragraphs (a) and (b) of the incontestability clause of the Equitable policy issued to Mr. Bell.[6]

Many states have long had similar statutory requirements (*see Velez–Gomez v. SMA Life Assurance Co.,* 8 F.3d 873, 876 (1st Cir.1993); Annotation, *Construction of Incontestable Clauses Applicable to Disability Insurance,* 13 A.L.R.3d 1383 (1967)), and their validity is unquestioned in Indiana (*Bell,* 818 F.Supp. at 252; *Wischmeyer,* 725

F.Supp. at 1000) and elsewhere (*e.g., Northwestern Mutual Life Ins. Co. v. Johnson,* 254 U.S. 96, 101–02, 41 S.Ct. 47, 49, 65 L.Ed. 155 (1920) (Holmes, J.); *Ferguson v. Unionmutual Stock Life Ins. Co. of America,* 673 F.2d 253, 255 (8th Cir.), *cert. denied,* 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982); *see also* 18 George J. Couch, *Couch Cyclopedia of Insurance Law* § 72:3, at 284 (2d ed. 1983)). As Judge McKinney has explained:

These clauses are now required by statute in most states because without them, insurers were apt to deny benefits on the grounds of a pre-existing condition years after a policy had been issued. This left beneficiaries, particularly those in life insurance settings, in the untenable position of having to do battle with powerful insurance carriers. *See* 7 *Williston on Contracts,* § 912.394 (3d ed. 1963) (noting that these clauses came from the "early greed and ruthlessness of the insurers" who "too often ... resisted liability stubbornly on the basis of some misstatement made by the insured at the time of applying for the policy").

*Wischmeyer,* 725 F.Supp. at 1000. The incontestability clause is thus " 'in the nature of a statute of limitation and repose,' " *Columbian Nat'l Life Ins. Co. v. Wallerstein,* 91 F.2d 351, 352 (7th Cir.1937) (quoting the district court, 13 F.Supp. 865, 866 (N.D.Ind. 1936)), *cert. denied,* 302 U.S. 755, 58 S.Ct. 283, 82 L.Ed. 584 (1937), obliging the insurer to investigate the insured's medical history promptly else it become bound by representations contained on the insured's application. *See* 18 *Couch* § 72:2, at 283–84; 1A John Appleman and Jean Appleman, *Insurance Law and Practice* § 311, at 305–06, 311–12 (1981); *Velez–Gomez,* 8 F.3d at 876; *Keaten*

---

4. The relevant provisions of the statute have remained unchanged in substance since the early 1970s.

5. The statute permits the second version only in a policy that the insured has the right to continue in force until at least the age of fifty or, in the event the policy is purchased after the age of forty-four, for at least five years beyond the date of issue. Ind.Code Ann. § 27–8–5–3(a)(2). This condition was satisfied here, as the policy Equitable issued to Mr. Bell was renewable until he reached the age of 65. App. 18.

6. Equitable shortened the relevant time period to two years in both paragraphs of the incontestability clause, rendering the policy more favorable to the insured. *See* Ind.Code Ann. § 27–8–5–3(a), (b); *see also* 18 George J. Couch, *Couch Cyclopedia of Insurance Law* § 72:23, at 297–98 (2d ed. 1983); 1A John Appleman and Jean Appleman, *Insurance Law and Practice* § 311, at 313 (1981).

*v. Paul Revere Life Ins. Co.,* 648 F.2d 299, 301 (5th Cir.1981); *Massachusetts Casualty Ins. Co. v. Forman,* 516 F.2d 425, 428 (5th Cir.1975), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976); *Bell,* 818 F.Supp. at 251–52; *Johnson v. Metropolitan Life Ins. Co.,* 53 N.J. 423, 251 A.2d 257, 267 (1969); *White v. Massachusetts Casualty Ins. Co.,* 96 A.D.2d 732, 465 N.Y.S.2d 345, 346 (1983).

▇ It is, accordingly, settled that a principal effect of these clauses is to preclude the insurer from attempting to rescind the policy after the requisite contestability period has expired on the ground that the insured made misrepresentations in the application. *E.g., Wallerstein,* 91 F.2d at 352, 353; *Velez–Gomez,* 8 F.3d at 876; *Button v. Connecticut General Life Ins. Co.,* 847 F.2d 584, 587–88 (9th Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 250 (1988); *Keaten,* 648 F.2d at 301 (collecting cases); *Manzella v. Indianapolis Life Ins. Co.,* 814 F.Supp. 428, 432 (E.D.Pa.1993).[7] Typically, this holds true even if the insured's misstatements rise to the level of fraud. *E.g., Forman,* 516 F.2d at 430; *Paul Revere Life Ins. Co. v. Haas,* 266 N.J.Super. 35, 628 A.2d 772, 773 (A.D. 1993). As we observed more than a half century ago, " 'while conscious fraud practiced in inducing another to act, to his detriment, is extremely obnoxious, ... the law recognizes that there should be a limitation of time in which an action may be brought or a defense set up.' " *Wallerstein,* 91 F.2d at 352 (quoting 13 F.Supp. at 866). *See also National Life & Casualty Ins. Co. v. Blankenbiller,* 89 Ariz. 253, 360 P.2d 1030, 1032 (1961).

Like a number of other states, Indiana has given the insurer the option to include in paragraph (a) of the incontestability clause an exception for fraudulent misstatements. Ind.Code Ann. § 27–8–5–3(a)(2)(A); *see also, e.g.,* Cal.Ins.Code § 10350.2 (West 1993); Fla.Stat.Ann. § 627.607(1), (2) (West 1984 & 1994 Supp.); 215 ILCS 5/357.3 (Smith–Hurd 1993); Mich.Comp.Laws Ann. § 500.3408 (West 1993); N.J.S.A. § 17B:26–5(a) (West 1985); N.Y.Ins.Law § 3216(d)(1)(B) (McKinney 1985); Tex.Ins.Code § 3.70–3(A)(2)(a) (West 1981). That version of the clause exempts from the period of limitation and repose the company's right to rescind the policy on the basis of fraud. Thus, had Equitable opted to include that exception, it could have claimed that the policy issued to Mr. Bell was invalid. However, the company chose instead to forego the added protection of this version, presumably because it renders the policy less attractive to consumers. *See Manzella v. Indianapolis Life Ins. Co.,* 814 F.Supp. 428, 432 (E.D.Pa.1993); *Provident Life & Accident Ins. Co. v. Altman,* 795 F.Supp. 216, 222 (E.D.Mich.1992); *see also Haas,* 628 A.2d at 775.

Incontestability provisions do not, of course, preclude insurers from expressly excluding coverage for losses arising from particular causes. *See Allen v. Aetna Life Ins. Co.,* 563 F.2d 1240, 1241 (5th Cir.1977) (per curiam) ("An incontestable clause does not bar the insurer from proving that the loss was not covered by the terms of the policy."); *see also Fuller v. Massachusetts Indemnity & Life Ins. Co.,* 680 F.Supp. 128, 131 (S.D.N.Y.1988). Thus, the policy at issue here provides that after two years, disability coverage will not be denied on the ground that the underlying disease or physical condition pre-dated the policy, "unless, effective on the date of the loss, such disease or physical condition was excluded from coverage *by name or specific description.*" Equitable suggests that this provision alone would bar coverage for Mr. Bell's multiple sclerosis, in view of the policy terms defining covered "sicknesses" to include only those which first manifest themselves after the policy's effective date and excluding those that manifested themselves before. App. 19, 20. In our view, however, these terms merely address the general scope of the policy; they do not identify any disease or condition with particularity sufficient to render them excluded by "name or specific description." As Judge McKinney reasoned in *Wischmeyer:*

---

7. Prior to the expiration of that time period, of course, the insurer remains free to challenge the accuracy of the statements in the application. Likewise, the insurer retains the right during that time to deny a claim on the ground that the underlying disease or condition existed before the issue date of the policy. *See Keaten,* 648 F.2d at 304 (Roney, J., concurring).

The most reasonable interpretation of these words is that a *specific* pre-existing condition, i.e., something such as tuberculosis or diabetes, may be specifically excluded from coverage by agreement of the parties if that condition is named or specifically described in the policy. If such an agreement of exclusion is reached by the parties, then the incontestable clause would not prevent the insurer from denying coverage based on *that particular named pre-existing condition.* If, on the other hand, such a specific pre-existing condition is not excluded from coverage by name or specific description, then the insurer cannot deny a claim based on that condition if the plaintiff's disability does not begin until more than two years from issuance of the policy.

This interpretation simply follows the rule of construction that language in an insurance contract is to be given its plain, ordinary, and common sense meaning. [*Indiana*] *Comprehensive Health Ins. Ass'n v. Dye,* 531 N.E.2d 505, 507 (Ind. App.1988); *Ebner v. Ohio State Life Ins. Co.,* 69 Ind.App. 32, 121 N.E. 315, 319 (1918). Here the most reasonable interpretation is that in order to benefit from this final phrase of the contestable clause, the insurer must specifically name or describe a particular pre-existing condition, and not merely add a clause in the policy attempting to exclude all pre-existing conditions.

725 F.Supp. at 1004–05 (emphasis in original). *See also Monarch Life Ins. Co. v. Brown,* 125 A.D.2d 75, 512 N.Y.S.2d 99, 102 (1987); *compare Raines v. National Old Line Ins. Co.,* 211 Kan. 885, 508 P.2d 928 (1973) (coverage specifically excluded for disorder of musculoskeletal structure of back or neck or for any disorder involving left arm).

The more nettlesome question is whether, despite the statutorily required provision prohibiting a denial of coverage for pre-existing illnesses after three (or in this case two) years, the insurer is free to exclude coverage for pre-*manifesting* illnesses. We have no doubt that, with the incontestability clause put aside, the policy terms quite clearly eliminate coverage for pre-manifesting illnesses.

Not only are covered "sicknesses" limited to those first manifesting themselves after the policy takes effect, but included in the "exceptions" to coverage are illnesses and conditions that manifest prior to the policy's effective date. App. 19, 20. The incontestability clause muddles the picture considerably, however, with its broad reference to "pre-existing" diseases and conditions. "Pre-existing" could be read to include diseases and conditions that have manifested themselves as well as those that have not—logically, any disease or condition that manifests itself must, of course, "exist." But Equitable would have us read "pre-existing" more narrowly to include only those diseases and conditions that, although they existed before the policy became effective, did not manifest themselves. Is that a correct reading of the term "pre-existing," or does it represent an impermissible attempt to restrict the coverage otherwise compelled by the legislature? This is a question that has sharply divided the courts.

Two circuits—the Fifth and the Ninth— together with a number of other courts, have concluded that the incontestability clause, despite its reference to "pre-existing" illnesses and conditions, leaves the insurer free to exclude pre-manifesting diseases and conditions from the policy coverage. *See Button,* 847 F.2d at 588–89 (9th Cir.); *Keaten,* 648 F.2d at 301–03 (5th Cir.); *Allen,* 563 F.2d at 1241–42; *Forman,* 516 F.2d at 428–30; *Weiner v. Paul Revere Life Ins. Co.,* No. 90–72772, 1991 WL 353370, at *2–3 (E.D.Mich. July 31, 1991); *see also* 13 A.L.R.3d 1383, § 5[a] (collecting state cases). Uniformly, these courts emphasize that the first portion of the clause, rendering the statements in the insured's application incontestable after the specified time period, relates solely to the validity of the policy and does not preclude the insurer from limiting what is covered. *Button,* 847 F.2d at 588; *Keaten,* 648 F.2d at 301–02; *Allen,* 563 F.2d at 1241–42; *Forman,* 516 F.2d at 428–29. As Benjamin Cardozo, then Chief Judge of the New York Court of Appeals, explained:

The provision that a policy shall be contestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage,

a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken.

*Metropolitan Life Ins. Co. v. Conway,* 252 N.Y. 449, 169 N.E. 642, 642 (1930). *Accord Educators & Professional Life Ins. Co. v. Jordan,* 259 Ark. 710, 536 S.W.2d 124 (1976); *National Life & Accident Ins. Co. v. Mixon,* 291 Ala. 467, 282 So.2d 308, 313–16 (1973); *Hooks v. Colonial Life & Accident Ins. Co.,* 43 N.C.App. 606, 259 S.E.2d 567, 569–70 (1979); *Carlson v. New York Life Ins. Co.,* 76 Ill.App.2d 187, 222 N.E.2d 363, 371 (1966). We readily agree with these courts that the initial provision of the incontestability clause disposes only of defenses based on purported misrepresentations in the policy application, and otherwise leaves the insurer free to establish the parameters of coverage as it desires.

Yet, of the courts that have confronted the precise question before us and decided it in the insurance company's favor, few have separately addressed paragraph (b) of the incontestability clause, which bars the denial of coverage on the ground of pre-existence. *See, e.g., Button,* 847 F.2d at 588–89 (relying solely on the provisions of paragraph (a)). In our view, paragraph (b) is the proviso more pertinent to our analysis, for depending on how the language is construed, paragraph (b) may (in contrast to its companion provision) constrain the insurer's ability to limit the coverage of the policy. Eschewing that result, the Fifth Circuit has reasoned that when other terms in the policy exclude coverage for pre-manifesting conditions, the provision barring denials for "pre-existing" conditions is rendered a nullity:

This statutory clause only prohibits denials of claims based on the prior *existence* of a disease. Such denials are irrelevant here because a disease is covered no matter when it existed, so long as it was not first manifested prior to the policy date. Thus subparagraph B has no effective field of operation. Giving it some scope of operation by reading "existed" as "existed and

manifested" goes beyond the language of the clause and is contrary to the general principle that incontestable clauses do not operate to extend coverage beyond that contracted for. Moreover, such a reading would not promote the purpose or policy of [the statute]. The statutory clause protects both parties from uncertainty where coverage turns on when a disease first existed, occurred or arose. Under such policies coverage may be uncertain even long after the policy was procured because a disease may exist but not be discoverable by reasonable medical investigation. This clause resolves the uncertainty in favor of coverage beginning two years after the policy date. Where coverage turns on *manifestation* rather than existence, the insurance policy itself eliminates this uncertainty since manifestation is normally discoverable by reasonable medical investigation.

*Forman,* 516 F.2d at 429–30 (emphasis in original). *Accord Weiner,* 1991 WL 353370, at *2–3.

 With due respect to our sister circuit, we are not persuaded by this rationale. As with any other contractual provision, we must accord the language of the statutorily mandated paragraph (b) its plain and ordinary meaning. *Bell,* 818 F.Supp. at 250; *Wischmeyer,* 725 F.Supp. at 1001 (*see supra* at 1280); 13 A.L.R.3d 1383, § 3[b]; 1A *Appleman* § 311, at 315 & n. 22. This provision states in no uncertain terms that after two years, no disability claim shall be denied on the ground that the underlying disease or condition "existed" before the policy became effective. As we have suggested, the term "exist" in its ordinary sense refers broadly to a state of being, without reservation as to other qualities, including manifestation. *Brown,* 512 N.Y.S.2d at 103. Thus, in the absence of any clarification in the clause, we believe it is most naturally understood to include any pre-existing disease or condition, regardless of whether it manifested prior to the policy date. *Id.* In this respect, we find the recent observations of the New Jersey appellate court in *Haas* to be compelling:

We also reject the subtle distinction made by the *Forman* court between the

terms "existence" and "manifested." Nowhere in the incontestability clause is the term "manifest" used. Therefore, the ordinary insured would not know, as plaintiff suggests, that the clause does not mean what it says by virtue of the phrase "first manifested" used in another policy provision. *See Wischmeyer*, 725 F.Supp. at 1003–04. Also, we question whether a reasonable insured would grasp the subtle distinction between the two words, even if a distinction exists.

628 A.2d at 777.[8] To insert into the clause a limitation to a disease or condition which existed but did not manifest prior to the effective date of the policy would be to evade the mandate of the legislature, and that we cannot sustain. Judge Lozano put it succinctly:

> By choosing language which differs from the statutorily required incontestability clause, and then pointing out the definitional differences between terms that are statutorily required, and terms which are inserted into the contract at the behest of the insurer, Equitable "attempts to nullify the protection of the incontestable clause by excluding from coverage illness which manifests itself before the policy is issued." *Fischer v. Massachusetts Cas. Ins. Co.*, 458 F.Supp. 939, 945 (S.D.N.Y.1978). Such an interpretation would controvert the statutorily imposed incontestability clause, and reduce its protection below that which was mandated by the legislature.

*Bell*, 818 F.Supp. at 251. *See Wischmeyer*, 725 F.Supp. at 1004–05; *Fischer v. Massachusetts Casualty Ins. Co.*, 458 F.Supp. 939, 944–45 (S.D.N.Y.1978); *White*, 465 N.Y.S.2d at 346; *see also Colonial Life & Accident Ins. Co. v. Newman*, 152 Ind.App. 554, 284 N.E.2d 137, 140 (1972). We therefore believe Indiana would join those courts holding that paragraph (b), once the contestability period has expired, bars the insurer from attempting to exclude coverage for losses attributed to pre-manifesting diseases and conditions. *Manzella*, 814 F.Supp. at 432–34; *Altman*, 795 F.Supp. at 222–23; *Wischmeyer*, 725 F.Supp. at 1003–05; *Fischer*, 458 F.Supp. at 944–45; *Haas*, 628 A.2d at 776–77; *Brown*, 512 N.Y.S.2d at 99; *White*, 465 N.Y.S.2d at 346. *See also Chavis v. United Family Life Ins. Co.*, 269 S.C. 179, 236 S.E.2d 816, 818 (1977) (agreeing in dictum).[9]

▮ One might well argue that, at the very least, the policy is ambiguous when paragraph (b) is read along side of the terms purporting to limit coverage to post-manifesting illnesses and conditions. *See Altman*, 795 F.Supp. at 223; *White*, 465 N.Y.S.2d at 346. The contention is unavailing for Equitable, however. Ambiguous insurance provisions normally are construed against the insurer, as it drafted the policy. *E.g., Wood v. Allstate Ins. Co.*, 21 F.3d 741, 744 (7th Cir. 1994) (applying Indiana law). Here, of course, Equitable's hands were tied to the extent that the law compelled it to include paragraph (b) in the policy. *See Bell*, 818 F.Supp. at 249–50. Yet, section 3(c) of the statute offered Equitable a way out of the dilemma:

> If any provision of this section is in whole or in part inapplicable to or inconsistent with the coverage provided by a particular form of policy the insurer, with the approval of the commissioner, shall omit from such policy any inapplicable provision or

---

**8.** We would add that in the "exceptions" portion of the policy, Equitable purported to exclude from coverage any loss arising from "sickness first manifesting itself prior to the effective date of coverage under this policy (*subject to* the second paragraph of the Incontestability provision on page six)." App. 20 (emphasis supplied). To the ordinary insured, this might suggest that paragraph (b) of the incontestability clause supersedes the policy terms limiting covered "sicknesses" to those first manifesting after the policy became effective. *See Haas*, 628 A.2d at 777 ("[w]e believe that the ordinary insured would read part (b) of the incontestability clause as subsuming any disclaimer by the carrier that the sickness 'first manifest[ed] itself' prior to the inception of the policy").

**9.** Although, strictly speaking, this case requires us to decide a question of Indiana law, given the similarity of Indiana's statute to those of other states and the frequency with which similar questions have been raised in federal as well as state courts throughout the country, this opinion has been circulated among all judges of this court in regular active service pursuant to Circuit Rule 40(f). No judge favored a rehearing en banc on the question of a conflict with the opinions of the Fifth and Ninth Circuits in *Forman* and *Button*.

part of a provision, and shall modify any inconsistent provision or part of the provision in such manner as to make the provision as contained in the policy consistent with the coverage provided by the policy. Ind.Code Ann. § 27–8–5–3(c). As we see it, this provision of the statute precludes us from reasoning, as the Fifth Circuit did in *Forman,* that policy terms purporting to exclude coverage for pre-manifesting illnesses nullify paragraph (b). 516 F.2d at 429–30. If Equitable sought to limit the operation of paragraph (b) to illnesses or conditions that existed prior to the policy date but did not manifest, then it was obligated by section 3(c) of the statute to seek approval from the Indiana Commissioner of Insurance to modify or delete the provision. Having failed to do so, it is bound by the directive of paragraph (b) not to bar any claim after two years on the ground of pre-existence. *Accord Manzella,* 814 F.Supp. at 433–34; *see also Altman,* 795 F.Supp. at 220–23; *cf. Blankenbiller,* 360 P.2d 1030, 1032 (Ariz. 1961) ("The insurer cannot therefore make the incontestability clause more onerous to the insured than the statute provides or include exceptions to incontestability other than those permitted by the statute.").

We readily acknowledge that there is an intuitive distinction between diseases that manifest and those that exist unbeknownst to the insured. Many disabilities spring from causes that may exist for years without symptoms detectable by an ordinary person. No doubt it is the prospect of denying coverage to a person who purchased coverage long before a latent disabling condition or disease manifested itself which motivated legislators to require provisions akin to paragraph (b). *See, e.g., Forman,* 516 F.2d at 429–30. When the disease has already revealed itself before the policy is purchased, on the other hand, the insured effectively deceives the insurance company by purchasing the policy in silence, knowing that she is likely to become disabled. The evident unfairness of that scenario is perhaps the strongest argument in favor of construing paragraph (b) more narrowly than its plain language would permit. *See Weiner,* 1991 WL 353370, at *3 ("an incontestability clause that estops an insurer from denying coverage due to the prior manifestation of disease would grant the same degree of protection to insureds who fraudulently misrepresent their medical status").

Even so, we cannot say that the prospect of fraud is enough to sustain a contrary reading of the statutory provisions. Indeed, whatever force this argument carries dissipates entirely when one recalls that Equitable had the option of including an alternate version of paragraph (a) that would have preserved the company's right to rescind the policy based on fraudulent misstatements in the insured's application. The company chose instead to forego that protection; and it cannot now attempt to regain through other policy terms what it surrendered in opting for the unconditional language of paragraph (a). *Altman,* 795 F.Supp. at 222; *see also Fischer,* 458 F.Supp. at 944. Mr. Bell is entitled to the full protection of the incontestability clause.

### III. CONCLUSION

Indiana has given insurers a limited period of time in which to ferret out whatever aspects of her medical history the insured may have concealed; disabilities commencing after that time, even if they arise from conditions that not only existed before the policy, but manifested themselves as well, must be covered. There may be a price to pay for such a rule, in the form of higher premiums and more extensive intrusions on the privacy of applicants as insurers go to greater lengths to expose any ailments that might have been concealed. But that is a balance that the legislature has struck and it is one for the legislature, not us, to alter. Insurance companies are not without recourse. They remain free to incorporate incontestability clauses that reserve their right to challenge fraudulent misstatements in the application. To the degree that conditional clauses render the policies less marketable, that is a cost that insurance companies must weigh against the prospect of paying benefits to someone who, like Mr. Bell, has hidden his illness and staved off disability until the period of repose expired.

AFFIRMED.